AMERICAN FOREST COMPANY, Appellant, v. JOSEPHINE R. HALL et al., Administrators of Estate of JOHN C. HALL.

Division One, December 1, 1919.

1. **NECESSARY PARTIES: Pledgor of Note Alone: Trustee of Express Trust: No Possession.** It is not enough to authorize the pledgor of a negotiable note, exceeding in amount the debt for which pledged, to maintain suit on the note in his name alone, that the pledgee loan it to him for purposes of protest, consent to and aid the pledgor in the suit, and through his counsel present the note in evidence at the trial; but in order to constitute the pledgor a trustee of an express trust, the pledgee must actually part with the physical possession of the note. If the original payee, after his assignment of the note, becomes possessed thereof, he can maintain the action in his name alone, notwithstanding his name is indorsed thereon in blank, for under the statute (Sec. 10018, R. S. 1909) he can strike out the indorsement and make a paper title in himself; but without actual possession, the right to strike out the indorsement, or to maintain an action on the note as the trustee of an express trust, does not exist.

2. ———: ———: ———: ———: **Pledged Note in Excess of Debt.** The fact that the notes, indorsed in blank, exceed the amount of the debt for whose payment they were pledged, does not authorize the pledgor alone, without actual physical possession of the notes, to maintain suit thereon, although the pledgee consents to such suit.   By an indorsement in blank and delivery notes are fully negotiated, and the indorser loses all title thereto, even title to the excess of the amount thereof over the debt for which they are pledged, and for the title to pass back to the indorser or pledgor there must be an actual redelivery.   Nor does the fact

that the pledgee loaned the notes to the pledgor for purposes of protest, nor that the pledgor in his petition alleges that he is the owner and legal hold thereof, make him the trustee of an express trust, for he must prove such allegation.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*George H. Williams* and *John A. Hope* for appellant.

(1) The pledgees, had they so elected, could have proceeded in their own names. 3 R. C. L. sec. 202, p. 994; 21 R. C. L. secs. 29 and 31, pp. 666 to 669; Logan v. Smith, 62 Mo. 455; White v. Phelps 100 Am. Dec. (Minn.) 190. (2) But, having the consent of the pledgees, plaintiff American Forest Company, pledgor, also had the right to proceed in its name alone. Under the facts and circumstances above stated, this action was and is properly prosecuted in the name of American Forest Company as sole plaintiff. (a) Plaintiff is a trustee with respect to the rights of its pledgees of the notes. And the Code expressly sanctions the prosecution of such an action in the name of the trustee without joining the beneficiary. Sec. 1730, R. S. 1909. West Plains Bank v. Edwards, 84 Mo. App. 469; Springfield to use. v. Weaver, 137 Mo. 670. The same principle is applied in Beattie v. Lett, 28 Mo. 596; Guerney v. Moore, 131 Mo. 668; Carter v. Butler, 264 Mo. 325. (b) Section 1730, is said to have been copied from the New York Code, Harrigan v. Webb, 49 Mo. App. 504. The Court of Appeals of New York has held that the pledgor may maintain the suit if there is such recognition of him by the pledgee as will "protect the defendant upon a recovery against him from a subsequent action by the assignor." Hays v. Hathorn, 74 N. Y. 504. Under the circumstances, payment by the defendants of any judgment rendered against them in this action would bar any subsequent action by the pledgees. And this is as far as defendants have any right to

inquire. Jolly v. Huebler, 132 Mo. App. 686; Hutchings v. Reinhalter, 23 R. I. 520; Dyer v. Sebrell, 135 Cal. 598; Greene v. McAuley, 70 Kan. 607. (c) It is the universal rule, independent of the above statutory provision (Sec. 1730), that the pledgor, having as in this case the acquiescence of the pledgee, may sue in his own name for the benefit of himself and his pledgee, and recovery should not be denied on the ground that the note is pledged or that only the pledgee can sue. 21 R. C. L. sec. 31, p. 669; 3 R. C. L. sec. 200, p. 991; 2 Daniel on Negotiable Instruments (6 Ed.), secs. 1181a, 1191, 1192, 1200 and 1201. (d) The following further authorities support our contention that plaintiff can proceed in its own name: Nicolay v. Fritschle, 40 Mo. 67; Barber v. Straub, 111 Mo. App. 585; Hovey v. Sebring, 24 Mich. 232; Titonic Bank v. Bagley, 68 Me. 250; McCallum v. Driggs, 35 Fla. 288; Jump v. Leon, 192 Mass. 513; Fay v. Hunt, 190 Mass. 378; Lowell v. Bickford, 201 Mass. 545.

*Chas. H. Winston* for respondents.

(1) The payee of the notes cannot sue on the notes already indorsed and transferred by such payee, nor can such payee lawfully collect the notes. R. S. 1909, secs. 10001, 10002, 10003, 10021, 10027 and 10174; Overall v. Ellis, 32 Mo. 327. The indorsements and delivery of the notes had the same effect to transfer the entire legal title to the assignees, and left nothing in the assignor but a right to demand an accounting upon certain contingencies. Overall, Admr. v. Ellis, 32 Mo. 327, 38 Mo. 209; Lee v. Turner, 89 Mo. 489; Neuhoff v. O'Reilly, 93 Mo. 169; Turner v. Hoyle, 95 Mo. 346; Keim v. Vette, 167 Mo. 399; Wright Inv. Co. v. Frisco Realty Co., 178 Mo. 80. (2) Neither the probate court, nor the circuit court on appeal, has any power or jurisdiction to allow any equitable claim or demand of assignor or pledgor or indorser of the four notes held by the bank and trust company whether as assignees,

pledgees or indorsees of said notes; nor has the probate court, or the circuit court on appeal, any jurisdiction to allow appellant any conditional right or claim or demand before the happening of the condition, if any, upon which such conditional right or claim or demand shall have become absolute, if at all, and so be a legal right, claim or demand, and not a mere equitable or conditional right, claim or demand. Tenny v. Lasley, 80 Mo. 664; Stevens v. Stevens, 172 Mo. 37; R. S. 1909, sec 10174; Jeffers v. Oliver, 5 Mo. 433; Langham to use of Ortley v. Lebarge, 6 Mo. 355; Davis v. Christy, 8 Mo. 570; Wooden v. Butler, 10 Mo. 718; Webb v. Morgan, 14 Mo. 430; Boeka v. Nuella, 28 Mo. 180; Beattie v. Lett, 28 Mo. 596; Bennet v. Pound, 28 Mo. 598; Brady v. Chandler, 31 Mo. 28; Hutchings v. Weems, 35 Mo. 285; Simmons v. Belt, 35 Mo. 461; Thomas v, Wash, 1 Mo. 665. "Our statute of assignments clearly requires the legal owner to sue in his own name." Boeka v. Nuella, 28 Mo. 180; Beattie v. Lett, 28 Mo. 596; Bennet v. Pound, 28 Mo. 598; Simmons v. Belt, 35 Mo. 461.

GRAVES, J.—There is a mass of record in this case, and a brief for respondent (we mean designated as Statement, Brief and Argument) of 198 pages. The pertinent facts are within a small compass, as also are the legal questions involved.

On December 1, 1910, the Chicot County Cotton-Alfalfa Farm Company (a Missouri corporation) made and executed four notes of $15,000 each to the "American Forest Company" (a New York corporation). These four notes were secured by deed of trust on some lands in the State of Arkansas. The maker of these notes, as appears on the face thereof, was the Farm Company supra. On the back of each note appeared the names of Wallace Estill, John C. Hall and Odon Guitar, Jr. We take it from the record that such was the condition of the paper when delivered to the American Forest Company. The notes were due re-

spectively in three, four, five and six years.  Before the maturity of either of said notes, the American Forest Company indorsed the note due in three years, by signing its name on the back thereof, and delivered the same to the Broadway Bank, of St. Louis, as collateral security for its note to such bank for some $15,000. In like manner the other three were indorsed and delivered to the St. Louis Union Trust Company, as collateral security to a note of large proportions held by that company, and executed by the American Forest Company.

There is a long history preceding the giving of the four $15,000 notes, signed as aforesaid, but most of it is immaterial to the real issues here. So far as material (if at all) it will be left for the proper points in the opinion.  The notes upon their face referred to the deed of trust aforesaid, and the deed of trust contained a provision as follows:

"It is expressly agreed and understood that failure to pay the interest upon said notes, or any of them, annually, when due and continuance in such default for a period of thirty days, shall cause all of said notes to become immediately due and payable, though not then due by the tenor, terms and effect thereof."

The deed of trust, in describing the four notes which it was given to secure, says:

"Whereas, the said Chicot Co. Cotton-Alfalfa Farm Company is indebted to the said party of the third part, the American Forest Company, in the sum of sixty thousand dollars, evidenced by four certain negotiable promissory notes of even date herewith for the sum of fifteen thousand dollars each, and due and payable respectively in three, four, five and six years from their date, with interest at the rate of five per cent per annum from date until paid, interest being payable upon said notes annually, *and each of said notes being indorsed by Wallace Estill, of Estill, Mo., Odon Guitar, Jr., of St. Louis, Mo., and John C. Hall, of Kansas City, Mo.,*

and all of said notes being payable at the office of said American Forest Company in St. Louis, Mo.''

Both the notes and the deed of trust referred to in the face of the notes placed the signers upon back thereof in the capacity of indorsers, as we formerly understood that term.

July 30, 1913, John C. Hall died intestate, and his widow and son were made the adminstrators of his estate in the Jackson County Probate Court. On July 20, 1914, the American Forest Company presented a demand against the John C. Hall estate, in which it sought an allowance of $57,919.73 in its behalf, alleging that:

''The said John C. Hall during his lifetime, to-wit, on the first day of December, 1910, made, executed and delivered, at the city of Kansas City, Missouri, for value received, his four certain negotiable promissory notes for the sum of fifteen thousand dollars each, payable on or before three, four, five and six years, respectively, after said December 1, 1910, to the order of American Forest Company, with interest at the rate of five per cent per annum from date; copies of which said notes are hereto attached and marked Exhibits 'A,' 'B,' 'C' and 'D,' respectively.''

And further pleading the deed of trust the said demand avers the maturity of all the notes, and the *ownership* of the notes in form as follows:

''And this claimant avers that the recitals in said deed of trust were made a part of each of the several notes hereinbefore referred to, as made, executed and delivered by said John C. Hall, by recital and reference in each of said notes to said deed of trust, as will more fully appear by the copies of said notes hereto attached.

''Claimant further avers that it still is the legal holder and owner of all said notes.

''Claimant further avers that the first of the aforesaid notes is overdue and unpaid, according to the face and reading thereof, and the three remaining notes have been duly and legally declared due by the under-

signed as the holder thereof, because of the failure to pay the interest due annually, and the default thereof for a period of thirty days thereafter, in accordance with the provisions of the deed of trust securing same, referred to and described in the face of said notes, a copy of which is hereto annexed; all four of which notes have been duly presented for payment, and payment thereof having been refused, have been duly and formally protested for non-payment, and the maker and indorsers duly notified thereof.''

Unverified copies of the four notes and copy of the deed of trust were attached to the demand, as was also a notice of demand. The notice above thus describes the liability of John C. Hall, on the four notes:

''Josephine R. Hall, Administratrix of the estate of John C. Hall, deceased, will take notice that the undersigned, American Forest Company, a corporation, has a demand against said estate for the sum of sixty thousand dollars and for interest thereon from December 1, 1912, to date, amounting to the sum of thirty-four hundred and forty-six dollars and twenty-five cents, with protest fees of twelve dollars founded on four promissory notes *indorsed by said John C. Hall,* of which the following are copies:''

The copies are the same as those attached to the demand or claim. Upon trial in the probate court, judgment went for defendants. Upon trial *de novo* in the circuit court (to which appeal was taken from the probate court) there was a like result. In the circuit court trial was had without the intervening of a jury. Instructions given and refused indicate in a way the views of that court. The instructions, both given and refused, upon both sides are as follows:

''Thereupon, plaintiff asked the court to declare the law to be as set forth in the following three declarations of law, numbered respectively 1, 2, and 3, to-wit:

''1. The court declares that under the law, the pleadings, and the evidence in the case, the claimant,

American Forest Company, is entitled to recover and that the four notes presented for allowance herein must be allowed and classified in the fifth class as demands against the estate of John C. Hall, deceased, for the full amount thereof, less any payments which the Court may find to have been made thereon.—*Refused.*

"2. If the court finds that the estate of John C. Hall, deceased, is liable on the four notes involved herein, then the claimant, American Forest Company, is a proper party to present and have the said notes allowed in its name as claim against said estate; notwithstanding the court may further find and believe from the evidence that one of said notes was and is now pledged to the Broadway Bank as collateral to secure a debt of said Forest Company to said bank of less amount than the pledged note, and notwithstanding also that the three remaining notes were and are now pledged to the St. Louis Union Trust Company as collateral to secure a debt of said Forest Company to said Trust Company of less amount than said three pledged notes.—*Refused.*

"3. Notwithstanding the court may find and believe from the evidence that the American Forest Company was a New York corporation and maintained an office and had business transactions in this State, yet if the court further finds and believes from the evidence that such maintainance of an office and business transactions were merely incidental to and connected with commerce or business transactions done or had in other states, then said American Forest Company was engaged in interstate commerce and was not subject to the statutes of this State concerning foreign corporations doing business in this State, and was not required to comply therewith, and it is no defense to the claim sought to be allowed herein that the said American Forest Company had not complied with the statutes of this State relating to foreign corporations doing business in this State.—*Given.*"

And at the same time defendants asked the court to give the following seven declarations of law, numbered respectively 1, 2, 3, 4, 5, 6 and 7, to-wit:

"1. The court declares the law to be that under the law and the evidence in this case the American Forest Company cannot recover, and the finding must be for the appellees.—*Given.*

"3. The court declares the law to be that having written its name 'American Forest Co., J. H. Byrd, Pres.' " on the backs of each and all of the four promissory notes, Exhibits 1, 2, 3 and 4, read in evidence, and having thereupon delivered the first note due, said Exhibit 1, to the Broadway Bank of St. Louis, Mo., so indorsed, for a valuable consideration, and having also thereupon delivered said other three notes, Exhibits 2, 3 and 4, to the St. Louis Union Trust Company of St. Louis, Mo., so indorsed for value, appellant cannot recover herein." —*Given.*

"6. The court declares the law to be that the American Forest Company cannot have or maintain action as a pledge of the four notes in the sum of $15,000 each, read in evidence, without joining the Broadway Bank and the St. Louis Union Trust Company as co-plaintiffs, with appellant in this action in the probate court; and that inasmuch as said Broadway Bank and said St. Louis Union Trust Company were not joined with the American Forest Company as plaintiffs in said probate court, the finding must be for appellees.—*Given.*

"2. The court declares the law to be that appellant's claim or demand as pledgor of the four notes of $15,000 each, is not the same claim or demand as that stated in the petition filed in the probate court by American Forest Company on the twentieth day of July, 1914, but in another and different claim or demand or cause of action from that set forth and contained in said petition; and that therefore, the claim or demand of appellant as a pledgor of said four notes cannot be allowed by the circuit court on this appeal.—*Refused.*

"4. The court declares the law to be that, if American Forest Company had any right of action against Chicot County Cotton-Alfalfa Company on the four notes, Exhibits 1, 2, 3 and 4, read in evidence, or on either or any thereof, then the right of action against the appellees herein on the cause of action stated in appellant's petition, filed July 20, 1914, in the probate court in this suit, is barred by the Statute of Limitations and the estate of John C. Hall, deceased, is exonerated from any and all liability.—*Refused.*

"5. The court declares the law to be that inasmuch as neither of the four promissory notes, Exhibits 1, 2, 3 and 4, read in evidence, was ever filed in the Probate Court of Jackson County at Kansas City, Mo., and neither thereof is or has been filed in this, the circuit court of said county in this suit, and inasmuch as appellant has not filed with said notes the affidavit required by Revised Statutes 1909, Sections 201 and 202, neither said probate court nor the circuit court can allow said notes as a claim or demand herein.—*Refused.*

"7. The court declares the law to be that the American Forest Company was a foreign corporation doing business as such in the State of Missouri without any license therefor at the time when the four promissory notes and the deed of trust, Exhibits 1, 2, 3, 4 and 5, read in evidence, were made and delivered in said State of Missouri, and that said promissory notes are and ever were void in so far at least as concerns the American Forest Company; and that by reason thereof appellant cannot recover herein.—*Refused.*"

From the adverse judgment in the Circuit Court, the American Forest Co. has appealed. It should be added that from the time the American Forest Company endorsed the notes, and delivered the one to the Broadway Bank and the other three to the St. Louis Trust Company, the possession of the same has been in those two financial institutions, and in addition the debts for which they were held as collateral have only been partially paid. This outlines the case.

I. It is clear from instructions 3 and 6 given by the trial court for the defendant that the court took the position that the pledgor, the American Forest Company, could not (acting alone) maintain this action. This is the crucial question in the case, as we see it. A few additional facts should be stated. Whilst the notes were pledged, yet at the time this action was begun, the notes, in amounts, exceeded the debts' for which they were pledged. That is to say, the note pledged to the Broadway Bank, exceeded by a $1000 the debt for which it was pledged, as such debt existed at the institution of this suit. So also the three notes with the Trust Company exceeded by several thousand dollars the debt for which they were pledged. In addition, the pledgees of the notes consented to and aided in this action by the pledgor. The pledgees not only turned over the notes for the purpose of protest, but through their own counsel had the notes present for the trial. In short, they not only consented to, but assisted in the prosecution of the action in the name of the pledgor. Were these two instructions proper under these facts?

*Necessary Parties: Suit by Pledgor: Trustee of Express Trust.*

The plaintiff first contends that it is a trustee of an express trust, and can maintain this suit without joining its beneficiaries, and calls our attention to Section 1730, Revised Statutes 1909. The question is whether or not the evidence in this case makes the American Forest Company a trustee of an express trust. The evidence shows that the two pledgees permitted the American Forest Company to have the notes for the purpose of protest, after which the possession was reverted to the pledgees. It is clear that the pledgees did not turn over the physical possession of these notes to the pledgor at the institution of the suit. The notes were not filed with the claim. Only copies thereof were filed. In fact, the evidence tends strongly to show that, whilst the pledgees were assisting in the prosecution of the claim, yet they held on like grim

death to the possession of the notes. When introduced in evidence on the trial they came from the possession of the pledgees. After being introduced in evidence, they were not left with the court or with the papers in the case, but again reverted to the possession of the pledgees. There can be no doubt that the pledgees might have turned over these notes to the pledgor for suit in its name, and that under such circumstances the pledgor would be a trustee of an express trust, and could sue without joining the pledgees. This was expressly ruled by this court in Springfield to use. v. Weaver, 137 Mo. l. c. 760, whereat this court said:

"The evidence shows that the bank, which held the tax bills as collateral, turned them over to Reilly the payee for collection, and authorized the suit to be instituted if necessary. This authority constituted Reilly the trustee of an express trust under the decisions of this court and gave him the right to sue in his own name under express provisions of the statute. He had possession of the bill and held the legal title; and the fact that it was impressed with a trust to the bank did not deprive him of the right to sue in his own name. [R. S. 1889, sec. 1991; Snider v. Express Co., 77 Mo. 527, and cases cited; Fisher v. Patton, 134 Mo. 32.]"

This was a tax bill, and our court (Dickey v. Porter, 203 Mo. l. c. 23) has drawn a distinction between commercial paper and a tax bill; but on the idea that the delivery by the pledgee or assignee to the pledgor or assignor of the instrument for the purpose of bringing suit upon and collecting it, would make the pledgor or assignor a trustee of an express trust, we take it the rule would be the same in each case. In other words, had the pledgees or assignees of these notes redelivered them to the American Forest Company for the purpose of having that company sue upon and collect them, there would be no question that the American Forest Company could maintain the suit in its name, as trustee of an express trust. This, because of the agreement between the parties. But the evidence in this case dis-

closes no such facts. Here the pledgees or assignees were holding on to the possession like grim death. They seemingly encouraged the suit, but did not turn over the possession to the American Forest Company prior to the suit for the purpose of maintaining the suit. They hung to the possession even during the trial, as they did before, and as they did thereafter. If they ever had an idea of making the American Forest Company a trustee they evidenced but little confidence in their trustee. The facts in evidence do not bear out the theory of a trustee of an express trust. If they did, there would be no trouble with the case for the plaintiff. Such a relationship must have some evidence to sustain it. The record here shows no such understanding or agreement as to make the American Forest Company a trustee of an express trust. A condition precedent is absent, i. e., the transfer of the possession of the notes to the American Forest Company. This was emphasized in the case of Springfield to use. v. Weaver, supra; whilst the Dickey-Porter case, supra, is broader and holds that the payee in a tax bill (pledged for less than its amount) has a right to sue on the bill, the court clearly recognizes a distinction between pledges of this kind (tax bills) and assigned notes or commercial paper.

The rule as to who can sue is well stated by BROWN, C., in Carter v. Butler, 264 Mo. l. c. 325, thus:

"In Dugan v. United States, 3 Wheat. 172, perhaps the leading modern case upon the subject, the Supreme Court of the United States formulated the rule as follows: 'After an examination of the cases on this subject (which cannot all of them be reconciled), the court is of opinion that if any person who indorses a bill of exchange to another, whether for value or for the purpose of collection, shall come to the possession thereof again, he shall be regarded, unless the contrary appear in evidence, as the bona-fide holder and proprietor of such bill, and shall be entitled to recover, notwithstanding there may be on it one or more indorse-

ments in full subsequent to the one to him without producing any receipt or indorsement back from either of such indorsees, whose names he may strike from the bill, or not, as he may think proper.' This case was decided in 1818. In 1859 Mr. Story, in his excellent work on Promissory Notes, sec. 452, said of it that it seemed to be the better opinion maintained in America, notwithstanding some early doctrine the other way. In the same year the doctrine to its fullest extent was unqualifiedly indorsed by this court in Beattie v. Lett, 28 Mo. 596, and it has now been placed entirely beyond our control by the Legislature, in Section 10018, Revised Statutes 1909, which is as follows: 'The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby relieved from liability on the instrument.' Section 10160 defines 'holder' to be 'the payee or indorsee of a bill . . . who is in possession of it.' This definition was evidently intended to meet the legal situation we have just been considering, by excluding from its terms all payees and indorsees not in possession, as well as by including the payee or indorsee in possession for the time being."

So in the case at bar, had the American Forest Company (after its assignment of the notes) become possessed thereof, it could have brought and maintained the suit, notwithstanding its name as indorser was written thereon. With possession, it could have stricken out the indorsement and made a paper title to the notes. But it must be borne in mind that the condition precedent to all this, is the possession of the notes by the person suing. Without this possession the right to strike out indorsements does not exist. The mere introduction of the instruments in evidence, coming as they did from the hands of the pledges or assignees, did not either in law or in fact remove the indorsement. On the other hand, the source from which the instruments came at the trial indicated that possession had

never been surrendered, and that the indorsements were in full force and effect. So that whilst we recognize to its fullest extent that the assignee of commercial paper may place the same in the hands of the assignor or *pledgor* and direct him to bring suit, and thus authorize a suit in the name of the pledgor as a trustee of an express trust, yet the facts of this case do not bring it within the rule. At the bottom of the rule stands the transfer of the possession, and the facts of this case thoroughly negative the transfer of possession. The theory of a trustee of an express trust is not in the case.

II. It is urged that the pledgees were willing to have the pledgors bring the suit, and consented to the suit; but this is not sufficient, so long as they hold on to the possession. It required the transfer of possession to give the pledgor the right to sue, on the theory of a trustee. This we suggest in addition to what is said in Paragraph One, supra.

Consent Without Possession.

It is also urged that, because the notes for which the notes in suit were pledged did not equal the notes involved here, this surplus left in the pledgor the right to sue. Dickey v. Porter, supra, is cited as an authority. That was a tax bill, and falls within a different category. Such instruments are choses in action, but not commercial paper. The Dickey-Porter case recognized the difference, as does also Richardson v. Ashby, 132 Mo. l. c. 245. The blank indorsement of these notes and the subsequent delivery thereof to the Broadway Bank and the St. Louis Union Trust Company placed the right to sue in those corporations.

By Section 10001, Revised Statutes 1909, it is provided: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

279 Mo. Sup. 42.

By Section 10002, Revised Statutes 1909, it it further provided: "The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement."

And by Section 10004, Revised Statutes 1909, it is provided: "An indorsement may be either special or in blank; and may also be either restrictive or qualified, or conditional. A special indorsement specifies the person to whom or to whose order the instrument is to be payable; and the indorsement of such indorsee is necessary to the further negotiation of the instrument. An indorsement in blank specifies no indorsee, and an instrument so indorsed is payable to bearer, and may be negotiated by delivery."

The instruments before us were indorsed in blank and delivered as aforesaid before maturity. They were therefore fully negotiated, within meaning of our statutes.

It is true that Section 10003, Revised Statutes 1909, says: "The indorsement must be an indorsement of the entire instrument. An indorsement, which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part it may be indorsed as to the residue." But no such indorsement was made here.

The indorsement and delivery of these notes constituted a negotiation of them under the statutes. They would thereafter pass by delivery, it is true, [R. S. 1909, sec. 10001.] But under all the evidence in this case there was no redelivery of these notes to the original payee, in the sense of transferring any kind of title. By the indorsements and delivery, first made, the payee, American Forest Company, lost all title to the notes. They were unconditionally negotiated. The said original payee could not sue thereon. In an early case (Brady v. Chandler, 31 Mo. l. c. 29) Scott, J., said:

American Forest Co. v. Hall.

"The instrument sued on was a note, and the justice of the peace had jurisdiction of the action. [McGowen v. West, 7 Mo. 569.] Before the action was brought Brady & Bro. had assigned the note to William Brady. After the assignment, there was no title to Brady & Bro., legal or equitable. They then had no right to bring this action. They were the plaintiffs as the cause stood. The endorsing a suit for the benefit of another is a matter of no importance in determining who are the real parties to the suit. Although the action was stated to be to the use of William Brady, that did not make him a party. The suit should have been brought in the name of William Brady. [Jeffers v. Oliver, 5 Mo. 433.]"

It is true in this case, that the payees, Brady & Bro. had made what our Section 10004, Revised Statutes 1909, denominates a special indorsement. They had indorsed to Wm. Brady. But whilst in the case at bar the indorsements were in blank, the delivery carried the title to Broadway Bank and St. Louis Union Trust Company just as effectively as if the indorsement had been special. It required a redelivery to transfer the title back to American Forest Company, and no such redelivery was ever made or attempted to be made.

In Hutchings v. Weems, 35 Mo. l. c. 286, this court said:

"This was a suit commenced in a justice's court upon an instrument in the nature of a promissory note. There was judgment in the circuit court for the plaintiff, and the defendant moved in arrest of judgment, for the reason that the suit was improperly brought in the name of Hutchings to the use of Blackford. The motion was overruled and the defendant appealed. The motion should have been sustained. The law is imperative that suits must be brought in the name of the real parties in interest (excepting the few cases specially provided for by statute). Judgment will be reversed and the cause remanded to the circuit court, where the record can be so amended as to make the real party in

interest the plaintiff, if that court find that it should
be done in furtherance of justice.''

Blackford was the assignee of the instrument and
Hutchings was the payee. This suggestion makes the
quotation, supra, clear.

Our statutes contemplate the bringing of the action
by the party in interest. It does not exclude, but in-
cludes, the trustee of an express trust. Absent this
relationship, as we hold in this case, then the actual
party in interest must bring the suits. In the instant
case the indorsements and delivery of these notes placed
not only the title, but the right to sue in the Broadway
Bank and the St. Louis Union Trust Company. That
title and that right might have -been reinvested in the
American Forest Company by a redelivery of the nego-
tiated notes to it, but this was not done. A loaning of
the notes for purpose of protest did not meet the situa-
tion. Nor did the production of the notes at the trial
by the pledgees meet the situation. The evidence fails
to show further negotiation of these notes by delivery.

In the claim filed, the American Forest Company
asserted, as it was bound to do, that it was the legal,
owner and holder of notes. This it failed to prove. From
it all we feel constrained to hold that the peremptory
instruction to find for defendants was properly given.

With this view the other instructions drop out of
the case.

The judgment is affirmed. *Blair, P. J.,* concurs;
*Bond, J.,* concurs in result; *Woodson, J.,* not sitting.


ON MOTION FOR REHEARING.


GRAVES, J.—We are confronted with a vigorous
motion for rehearing in this case, and the vigor of it,
occasions this opinion.

I. It is first urged in the motion that: ''The denial
of plaintiff's right to sue on the pledged notes is based
in the opinion upon a theory of the law which has no
application. The opinion follows Brady v. Chandler, 31
Mo. 29; Hutchings v. Weems, 35 Mo. 286, and Carter

v. Butler, 264 Mo. l. c. 325.   In each of these cases the situation before the Court was that of a complete transfer or assignment of the whole ownership and possession of the note.   In such cases the question as to who can sue on the note is, of course, controlled by the ordinary law of negotiable instruments and possession by the plaintiff at the time of the commencement of the action and thereafter is necessary.''

The trouble with our learned brothers is that they have overlooked an express statute on the subject of commercial paper.   They have made out no case of pledgor or pledgee in the literal and true sense of those terms.   They show notes indorsed in blank, which when delivered (as was true here) carries the full title and interest.   The only error we have discovered in the opinion, is where we use in the statement the words ''pledgor'' and ''pledgee,'' when we should have used the ''assignor'' and ''assignee.''

In the opinion we called to counsel's attention several sections of our negotiable instrument law, but these are overlooked by our learned brothers at the bar.

Section 10003, Revised Statutes 1909, among other things says:   ''The indorsement must be an indorsement of the entire instrument.''   The previous sections designate how indorsements shall be made and the effect thereof.   Under Section 10001, Revised Statutes 1909, these notes were fully and completely negotiated in law, when they were indorsed in blank, and delivered. There is no dispute that the notes were indorsed in blank and delivered. Under the law the negotiation of the notes stands admitted. This negotiation of the notes, under these statutes, carried all of the American Forest Company's rights therein.   Section 10004, Revised Statutes 1909, seems to contemplate ''restrictive or qualified or conditional'' indorsements, but the American Forest Company, did not so indorse.   It may be (a question we do not decide) that the American Forest Company might have so indorsed these notes as to have retained title or interest in them, but they did not do so.   This Com-

pany fully negotiated these notes, and it never after-ward acquired possession thereof. How we can say in one breath that our commercial paper has been fully negotiated (as were these notes), and then in the next breath say the payee therein has an interest in them, is beyond our reasoning. ''Negotiated'' as written in our statute means something. It is meaningless in the view of learned counsel. The statute says that it means that the transferee is the holder thereof. The holder thereof is the person possessed of the right to sue. We reiterate that GANTT, J., in Dickey v. Porter, 203 Mo., recognizes clearly the distinction between negotiable and non-negotiable instruments. He was dealing with a pledged tax-bill and not a negotiable note, as we have here. His ruling is authority for our ruling; and not adverse to it.

II. We did not discuss (it is true) the question as to whether or not the banks by their conduct might not have been estopped from suing upon these notes, had the American Forest Company obtained judgment. That question was not a vital one in the case. In fact it is not a question at all. The question here is the right of the American Forest Company to sue upon these notes, and not whether or not by acts *in pais,* the banks have estopped themselves from suing thereon. Live and vital issues of the case are the ones for discussion in the opinion and not side and irrelevant issues. Whether the conduct of the banks might have estopped them from further action in the premises should be left to a case where the question is vital. The question here is, did the American Forest Company, after negotiating these notes, have the right to sue upon them? When this question is kept in mind, the case is a simple one as under our law as to negotiable instruments they had parted with all their rights in and to these notes. There is no restriction in their indorsement, so far as this record shows.

To clarify the situation, suppose the banks had sued upon these notes, and the defendants had suggested

by their answer that there was a defect in the parties plaintiff in that the American Forest Company was a party in interest and should have sued along with the banks? What should a court do in this situation, with the clear and unqualified indorsement of the notes, and the delivery admitted? The question answers itself.

There is no substance in the motion for rehearing and it should be overruled. If the mistake in thus bringing the suit works a hardship, it is not one brought about by law or this court. Let the motion be overruled. *Blair, P. J.,* and *Woodson, J.,* concur.