MILAEGER WELL DRILLING COMPANY, INC., Respondent, vs. MUSKEGO RENDERING COMPANY, Appellant.

*September 12—October 8, 1957.*

574

576

For the appellant there was a brief by *Dougherty, Arnold, Philipp & Murray* of Milwaukee, attorneys, and *Clayton A. Cramer* of Waukesha of counsel, and oral argument by *Mr. Cramer*.

For the respondent there was a brief by *Kenney & Hays* and *Giles F. Clark,* all of Milwaukee, and oral argument by *Mr. Clark.*

CURRIE, J.   The brief of the defendant states the questions to be determined on this appeal to be:

(1) Did the plaintiff fulfil its contract?

(2) If the plaintiff did not fulfil the contract, did the defendant so conduct itself so as to waive such fulfilment?

With respect to the first question, it is defendant's contention that the contract required the plaintiff to continue drilling operations until *"sufficient* water" was obtained, and the plaintiff has breached the contract by not doing so. *Genni v. Hahn* (1892), 82 Wis. 90, 51 N. W. 1096, is cited as authority holding that plaintiff cannot recover if it committed such breach.

It is defendant's further position that the term "sufficient water" appearing in the contract is ambiguous and subject to explanation by parol testimony.  Defendant's counsel attempted to have Wauer, president of the defendant, testify as to a conversation had between him and Milaeger, president of the plaintiff, at the time the parties were negotiating the contract of October 1, 1951.  The defendant sought thereby to establish that the parties had verbally agreed upon a definition of what was intended by use of the words "sufficient water."  The trial court sustained an objection to the question inquiring as to such conversation between the parties on the ground that to admit such testimony would violate the parol-evidence rule.  The defendant then made an offer of proof to the effect that Wauer would have testified that the parties before the contract was entered into agreed that the term "sufficient water" in the contract meant a minimum of 50 gallons per minute of usable water.

We are satisfied that the trial court committed error in excluding such offered testimony.  If a contract is ambigu-

ous, the declarations of parties constituting the negotiations for the contract may be resorted to in aid of construction without violating the parol-evidence rule. *Wheelwright v. Pure Milk Asso.* (1932), 208 Wis. 40, 44, 240 N. W. 769, 242 N. W. 486. Such error, in view of the precedent of *Genmi v. Hahn, supra,* would be prejudicial and require a new trial unless the appeal can be decided in plaintiff's favor on the second issue of waiver.

In passing on the question of whether or not the defendant by its acts effectively waived any defective performance on the part of the plaintiff, it is necessary to review the pertinent evidence bearing on this issue.

Drilling operations were commenced by the plaintiff on November 8, 1951, and, on January 8, 1952, the same were discontinued after a depth of 202 feet had been reached. The next day a bailer test was run. This disclosed that the water present was "cloudy and a bit muddy." This is usually the condition of the water at the start of opening up a new well. Milaeger then telephoned to Wauer and informed him "It looks like we got a well," and Wauer requested that the test by pump be run.

It was agreed between the parties that a screen should be put into the bottom of the well. This consisted of pipe six inches in diameter and 28 feet eight inches in length having holes perforated in it. Such screen was an "extra" not covered by the contract, and the $67.50 and $17.60 items in plaintiff's first statement rendered in the sum of $2,205.10 covered the same. Such screen was placed in the well on January 11, 1952, and on the same day the plaintiff attached its pump and ran the test. Such test disclosed that the well had a capacity of from 20 to 30 gallons per minute. Milaeger then offered to "develop" the well so as to get the cloudiness and sand out of the water at a cost of $10 per hour. Wauer

refused such offer and stated that he would grout the well and "develop" it with his own pump.

Milaeger, however, admitted on his adverse deposition taken before trial that Wauer was not then satisfied with the capacity of water produced by the well as disclosed by the test. The plaintiff removed its equipment from defendant's premises on January 14, 1952, and on the same day mailed to the defendant its statement in the sum of $2,205.10, a copy of which appears in the statement of facts preceding this opinion.

The defendant possessed a turbine pump having a pumping capacity of 90 gallons per minute. The defendant had its maintenance man, one Willms, drop 120 feet of pipe, with a 10-foot "tailpiece" attached, into the well and connect the same to this turbine pump. Willms gave contradictory testimony as to how he operated such pump. While an adverse witness called by the plaintiff, he testified that he "opened" the pump up to capacity. Later, when called as defendant's witness, he stated that he operated the pump very slowly. Willms operated the pump until it broke suction as a result of there being no more water in the well at the depth reached by the pipe attached to the pump. Then the pump was primed again and the pump operated very slowly so as not to exceed the capacity of the water present. The capacity of the well was found to be no more than 20 to 30 gallons per minute.

These pumping operations were performed by Willms in January, 1952. Nevertheless, in spite of both the pump tests made by plaintiff and Willms disclosing a well capacity of 20 to 30 gallons per minute, the defendant made its $1,000 remittance on account on February 1, 1952, by mailing a check for that amount to the plaintiff. Such check was not accompanied by any letter stating any reservation of rights

against the plaintiff. Neither did the detachable voucher attached to such check contain any reservation whatsoever.

We consider that the instant appeal is clearly ruled by our decision in *Guschl v. Schmidt* (1954), 266 Wis. 410, 417, 63 N. W. (2d) 759, wherein it was stated:

> "While a partial or total payment on a building contract does not constitute an acceptance of the work in so far as latent defects are concerned, such a payment by the owner with knowledge of a particular defect does constitute a waiver of such defect in the absence of any other circumstances mitigating against such a waiver."

The brief of the defendant concedes that the foregoing is a correct statement of the applicable principle of law. However, it argues that there are mitigating circumstances here present which prevent the $1,000 payment on account from constituting a waiver by the defendant of its right to claim that plaintiff had breached its contract by not drilling the well to a depth where "sufficient water" had been obtained. Such mitigating circumstances are alleged to consist of "frequent" statements by Milaeger that the well could be "developed" to produce sufficient silt-free water.

The evidence does not bear out such contention. Milaeger testified that the reason why Wauer insisted in the summer of 1952 that the well be drilled deeper was not because Wauer was dissatisfied with the capacity of the well, but rather due to the fact that the well had become clogged by sand as a result of Willms operating the turbine pump at too high a speed contrary to Milaeger's instructions. Milaeger further testified that Wauer's refusal to make further payments on account because of insufficient water was "long" after the defendant had "messed it up" with its turbine pump.

On the other hand, Wauer testified that, after the turbine pump became clogged with sand while Willms was operating it, Wauer called Milaeger and complained, and Milaeger

came out to defendant's plant. Wauer stated that Milaeger then said that defendant had to "develop" the well. Wauer then asked, "How you going to develop a hole of sand where there ain't no water?" To this, Wauer testified Milaeger replied that water was there and it could be developed with the use of a sand screen costing $450. Wauer then inquired if the plaintiff would guarantee water if such a screen were installed. According to Wauer, Milaeger refused to give such guarantee. Wauer concluded his summary of the conversation by testifying, "Well I said there ain't no water. I ain't going to pay *any more*."

Wauer did not in his testimony fix the date of this conversation except to testify it was after the accident with the turbine pump. Such accident was the choking of the pump by sand. However, the above-quoted sentence from Wauer's summary of such conversation definitely establishes the date of the same as being after the $1,000 payment of February 1, 1952. This is because Wauer's statement that he was not going to pay *"any more"* necessarily implies that he had already paid something to the plaintiff. The first payment that defendant made to the plaintiff was the one in the sum of $1,000 made February 1, 1952.

We, therefore, conclude that the record discloses no mitigating circumstances existed as of February 1, 1952, when such $1,000 payment was made. The making of such payment without any attempted reservation of rights, constituted a waiver by the defendant of any breach on the part of the plaintiff based upon the insufficiency of the water obtained at the 202-foot depth to which the well had then been drilled. This determination disposes of plaintiff's cause of action for the balance due on the original contract for drilling the well to the 202-foot depth.

The trial court by its findings of fact determined that the services rendered and materials furnished by plaintiff in 1953 in deepening the well were performed at the special

instance and request of the defendant; that the defendant agreed to pay therefor; and that the reasonable value of such services and materials was $389. Such findings must stand on this appeal if not against the great weight and clear preponderance of the evidence. The testimony of Milaeger, president of the plaintiff corporation, fully substantiates such findings.

*By the Court.*—Judgment affirmed.