## FIDELITY AND CASUALTY COMPANY OF NEW YORK (Plaintiff), Respondent,

### v.

### Ely GLASS and Doris Glass, Eleanor Glass, Martin Glass, and Curley Auto Sales, Inc., a corporation (Defendants), Appellants.

No. 30243.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1959.

Rehearing Denied Oct. 16, 1959.

Hinkel & Carey, Henry C. Hinkel, Harold D. Carey, Clifford L. Goetz, St. Louis, for appellants.

Hocker, Goodwin & MacGreevy, Donald J. Stohr, St. Louis, for respondent.

WOLFE, Presiding Judge.

The plaintiff had a judgment in the amount of $3,400 against Curley Motor Sales, Inc., a corporation. The plaintiff ran an execution on the judgment, which was returned unsatisfied. It then brought this suit against the Curley Auto Sales, Inc., another corporation organized and directed by the same parties who had organized and directed the Curley Motor Sales, Inc. The individual stockholders were also named as defendants. The plaintiff charged that Curley Motor Sales, Inc. was operated by the defendants to defraud creditors, and that its assets had been fraudulently transferred to Curley Auto Sales, Inc. to avoid payment of plaintiff's judgment. There was a finding and decree against all defendants, and they have all appealed.

In May, 1955 three of the defendants with one other person signed and swore to Articles of Incorporation for the Curley Motor Sales, Inc. In the Articles it was stated that the corporation would be authorized to issue 3,000 shares of common stock at the par value of $10 per share,

and that 1,000 shares of the value of $10,-000 had been subscribed and paid for. It listed the stockholders and the amount of stock held by each, showing 400 shares in the name of Ely Glass, 400 shares in the name of Eleanor Glass, 100 shares in the name of Martin Glass, and 100 shares in the name of Luckie Stradtman.

The Certificate of Incorporation was issued on May 9, 1955. At that time no stock had been paid for. The first entry in the books of the Curley Motor Sales, Inc. is under the date of June 1, 1955. It shows cash in bank $10,000. Below that is recorded "Note payable to Curley Auto Sales, Inc. $9,500.00" and "Capital stock $500.00."

This $10,000 was the proceeds of a cashier's check for that amount issued by the Southwest Bank and payable to Curley Motor Sales, Inc. The check had been purchased with a check of the Curley Auto Sales, Inc., signed by Ely Glass, President.

The accountant who worked on the books of these two and other corporations of the defendants testified that he had never seen the note referred to in the entry. The president of the corporation, Ely Glass, testified that he did not read the Articles of Incorporation before he signed and swore to them. He stated that only $500 capital had been subscribed. The $10,000 was carried on the books of the Curley Auto Sales, Inc. as a loan of $9,500 on a note given by Curley Motor Sales, Inc. and $500 as a loan to the officers of Curley Motor Sales, Inc. The books offered in evidence also indicated an additional loan of $1,000 to Curley Motor Sales, Inc. There was a check issued by Curley Motor Sales, Inc. to Curley Auto Sales, Inc. in the sum of $5,500 on April 27, 1956. The check stub bears the notation that it is in part payment of a loan. The suit giving rise to the judgment that the plaintiff herein seeks to collect was filed on April 11, 1956.

Another check payable to the Curley Auto Sales, Inc. in the sum of $5,000 was issued on February 23, 1957 by the Curley Motor Sales, Inc., and on March 25, 1957 a check for $1,529.76 also payable to the Curley Auto Sales, Inc. wiped out the account of the Curley Motor Sales, Inc. This last check was issued two days before the plaintiff was awarded judgment against Curley Motor Sales, Inc., and cleared on the day of the judgment.

The defendants offered in evidence what was said to be a copy of a franchise tax report showing that the total subscribed and paid up shares of the Curley Motor Sales, Inc. was of the value of $500. There was also a copy of a federal tax return showing the same thing. No note was introduced in evidence, and no minutes of the Curley Auto Sales, Inc. authorizing a loan were offered.

The individual defendants were the stockholders and officers of both corporations, but the stock book of the Curley Motor Sales, Inc. was not in evidence, and defendant Glass testified that it was lost. Upon these facts the court found for the plaintiff against all of the defendants

■ A number of contentions are raised by the appellant, but we will consider only those essential questions necessary for a determination of the appeal. Logsdon v. Duncan, Mo.Sup., 293 S.W.2d 944. In an equity case such as this, we review the whole record, determine the weight and value of the evidence, and reach our own conclusions as to the facts, giving due deference to the findings of the chancellor who saw the witnesses in person and heard their testimony. Botto v. James, Mo.Sup., 209 S.W.2d 256.

Appellants assert that the decree is not supported by the evidence. It is stated that the defendants made no false representations to the plaintiff upon which the plaintiff relied. We are cited to a number of cases relating to fraud in the inducement, but these are without application to the matter before us. The plaintiff does not charge that it was fraudulently induced to do anything. It simply charges that

the defendants fraudulently transferred the assets of the Curley Motor Sales, Inc. to defraud plaintiff of the sum due it on a judgment against that company.

■ The defendants also assert that interlocking interests of the individual defendants in the two corporations is no evidence of wrongdoing or fraud. With that we can agree, but where the same individuals have full control of two corporations, they are not free to juggle funds from one to the other to avoid obligations to third parties. In discussing this subject in May Department Stores v. Union Electric Light & Power Co., 341 Mo. 299, 107 S.W.2d 41, loc.cit. 55, the Supreme Court had this to say:

"Making a corporation a supplemental part of an economic unit and operating it without sufficient funds to meet obligations to those who must deal with it would be circumstantial evidence tending to show either an improper purpose or reckless disregard of the right of others. Equity sets aside legally sufficient conveyances if the purpose is to defraud creditors."

■■ It is equally true that equity will disregard the legal fiction of distinct corporate existence if its affairs are so conducted as to make it a mere tool designed for fraud upon third persons. Osler v. Joplin Life Ins. Co., Mo.Sup., 164 S.W.2d 295; Ruckels v. Pryor, 351 Mo. 819, 174 S.W.2d 185; State, on Inf. of McKittrick v. Koon, 356 Mo. 284, 201 S.W.2d 446. The indicia or badges of fraud as they relate to the transfer of assets in defraud of creditors are set out by the Supreme Court in Hendrix v. Goldman, Mo.Sup., 92 S.W.2d 733, loc. cit. 736, wherein it is stated:

"Recognized indicia or badges of fraud include fictitious consideration, false statements as to consideration, transactions different from the usual method of doing business, transfer of all of a debtor's property, insolvency, confidential relationship of the parties, and transfers in anticipation of suit or execution. None of these things alone prove fraud, but they do warrant an inference of fraud, especially where there is a concurrence of so many of these badges."

These enumerated badges of fraud appear to be all present in the evidence before us. The only consideration asserted for the checks payable to the Curley Auto Sales, Inc. was that they were in payment of a loan. The trial judge found that there was no loan. He did not believe Ely Glass, and in this we readily defer to him. There was no note. There was no authorization for a loan, and the whole idea appears to have been conceived some weeks after the incorporation of the Curley Motor Sales, Inc. with absolutely no paid in capital. Thus we have the first badge of fraud mentioned. Another badge of fraud are transactions differing from the usual method of doing business. As stated, the false affidavit on the Articles of Incorporation and the juggling of funds from one corporation to another were certainly not the usual method of legitimate business.

■ Another badge of fraud is the transfer of all the debtor's property. This was admittedly done. The individual defendants were in complete control of the corporations, so the relationship necessary for fraud was present. One of the checks drawn was shortly after the suit was filed which resulted in the judgment mentioned against the Curley Motor Sales, Inc., and the last check payable to Curley Auto Sales, Inc. was for the whole balance that the Curley Motor Sales, Inc. had in the bank. It was cleared the very day that the judgment was entered against the Curley Motor Sales, Inc. Not only all of the badges of fraud mentioned in the above cited case are present, but in addition there was a confusing similarity of names. The evidence fully supports the trial court in finding for the plaintiff in that the transfer

of the funds from one corporation to the other was obviously done to defraud plaintiff.

The judgment is affirmed.

ANDERSON and RUDDY, JJ., concur.