NATIONAL MERCHANDISING CORPORA-
TION, a corporation, Plain-
tiff-Appellant,

v.

Robert McALPIN, Defendant-Respondent.

No. 8840.

Springfield Court of Appeals.

Missouri.

April 14, 1969.

James R. Hall, Doniphan, for plaintiff-appellant.

John Hall Dalton, Dalton, Treasure & Bullard, Kennett, for defendant-respondent.

HOGAN, Presiding Judge.

This is an action on a promissory note, executed by the defendant as part of a contract between him and the plaintiff. The trial court has sustained the defendant's motion for summary judgment, and the plaintiff has appealed. We will consider only those questions necessary to a proper disposition of the appeal. Logsdon v. Duncan, Mo., 293 S.W.2d 944, 946 [1]; Fidelity and Casualty Company of New York v. Glass, Mo.App., 327 S.W.2d 538, 540 [1].

The contract must be described briefly. It is a single document which consists of three parts: (1) an "application," which is really an order form; (2) an installment note; and (3) on the reverse side, sixteen paragraphs of "contract terms and conditions."

Part (1) of the contract, the "application" is as follows:

FILED 9ʹ156

**APPLICATION**
NAMCO ASSOCIATION OF ENDORSED BUSINESSES

FEB 21 1966 JUN 23 1967

**NATIONAL Merchandising Corp.** 11th YEAR

COURT OF HIGHLAND AVENUE — GREEN BAY, WISCONSIN 54305 — PHONE 437-9606

FIRM NAME _SUNSET TV SERVICE_ _POPLAR BLUFF-FISK, QULIN, MO._
AREA OF DISTRIBUTION

ADDRESS _625 ARTHUR_ ESTIMATED DATE OF PUBLICATION: AS SOON AS POSSIBLE

_POPLAR BLUFF_ _MISSOURI_ VIA: DIRECT MAIL – F.O.B. DESTINATION
CITY ZONE STATE

MANAGER _PLOUFF_ | DIVISION _ST. LOUIS-RURAL_ | ENDORSEMENT SUPERVISOR _RIVERS-PATTERSON_ | DATE _2-16-66_

QUANTITY _8 DECALS_ _8,550_

**NAMCO EXCLUSIVE ENDORSEMENT PROGRAM**

Phase I — Namco Endorsement Program, including Endorsement Kit and privilege to utilize same in client's overall promotional efforts.

Phase II — _WHITE_ custom screened Tel-A-Covers® with _GREEN_
— lettering includes a _24_ months calendar. Proof of mailing will be submitted with an official notarized certificate.

Phase III — Certificate inserted with each Tel-A-Cover®. (Depending on nature of business.)

FEE _$1,080.00_

AD SIZE: FMD (FRD) FBD BMD BRD SP BOOK SIZE. LARGE (SMALL)

ARRANGEMENT OF COPY AND SIZE OF LETTERING IS LEFT TO THE DISCRETION OF NAMCO. REVERSE PLATE WILL BE LIMITED TO 25% OF THE SPACE. THE USE OF CUTS WILL BE AT THE RISK OF THE ADVERTISER. PLEASE PRINT AD COPY BELOW.

BOLD → **SUNSET TV**
REVERSE → SERVICE
FAST-RELIABLE
BOLD → SU 5-2148
ALL WORK GUARANTEED
625 ARTHUR POPLAR BLUFF

PRIVILEGE TO RENEW MEMBERSHIP IN THE ASSOCIATION FOR ABOVE MENTIONED AREA WILL BE EXTENDED IN _24_ MONTHS UPON SATISFACTORY PERFORMANCE OF THE NAMCO ENDORSEMENT CODE OF ETHICS.

WE CERTIFY THAT, TO THE BEST OF OUR ABILITY, WE WILL MAINTAIN THE CODE OF ETHICS OF THE NAMCO ASSOCIATION OF ENDORSED BUSINESSES. WE AGREE TO ABIDE BY THE FOLLOWING:

1. To provide the best possible level of SERVICE and VALUE to our customers.
2. To MAINTAIN STANDARDS for our premises, equipment, and personnel in keeping with the best practices in our industry.
3. To resolve PROMPTLY, COURTEOUSLY, and FAIRLY any consumer complaints or disputes that may arise.

Applicant's Signature X _Robert McAlpin_

CERT. COPY ATTD. ___ NOT REQ. ___ PERMIT NO. ___

---

At the bottom of the page, printed below the obverse side of the promissory note are the words "See reverse side for other terms and conditions," and "all applications subject to acceptance by National Merchandising Corp." As the reproduction shows, the "application" *seems* to be an order for some advertising material, to be distributed in the "Poplar Bluff—Fisk, Qulin, Mo." area, "as soon as possible."

Part (2) of the contract is a promissory note made to "National Merchandising Corp.," in the amount of $1,080. The note

it made payable in 24 monthly installments of $45. On the reverse side of the note, there is an endorsement, as follows:

Pay to the order of
Kellogg Citizens Nat'l Bank

with recourse. /s/ RW
NATIONAL MERCHANDISING
CORPORATION
By /s/ Robert Webb

Robert Webb—Ass't Sec'y-Treas.

Part (3) of the contract consists of sixteen paragraphs of "Contract Terms and

Conditions." We need not set those out at length. Our attention is drawn to paragraphs one and sixteen. Paragraph one provides, that the "application" is subject to acceptance and performance at the plaintiff's home office, and that upon acceptance, the application "becomes valid governed by the laws of Wisconsin." Paragraph sixteen is as follows:

"It is understood that NAMCO, from time to time, will undertake to investigate the operations of the Endorsee to determine if he is complying with the terms of the Code of Ethics. Failure to do so, once warning has been given, can result in termination of his membership in the Association and insistence upon removal of the NAMCO Seal of Endorsement."

The plaintiff declared upon the note. The petition sets out that the plaintiff is a corporation "duly incorporated in the State of Wisconsin" and authorized to do business in Missouri. The note is then set out generally according to its terms, and the whole of the contract is pleaded as an exhibit, as provided by Rule 55.24.[1] The petition then pleads that by reason of an acceleration provision, the whole of the note is due, and judgment in the sum of $1,080, plus attorney's fee, plus interest is prayed.

Defendant's answer denies that the plaintiff is authorized to do business in Missouri and denies that plaintiff has a right to sue in Missouri. Execution of the note is admitted, but the allegations as to its tenor and import are denied. The defendant affirmatively pleads lack of consideration and failure of performance.

Interrogatories were served upon the plaintiff. Defendant inquired, among other things, whether plaintiff was registered as a foreign corporation at the office of the Secretary of State in Jefferson City. The defendant answered affirmatively,

stating that it was registered on December 14, 1959.

The defendant then filed a motion for summary judgment, attaching thereto a certificate of Hon. James C. Kirkpatrick, Secretary of State of Missouri, showing that the plaintiff was in fact organized under the laws of Massachusetts, and that on January 1, 1962, plaintiff's certificate of authority was forfeited for failure to file the Annual Registration Report and Anti-Trust Affidavit required by law. The Secretary further certified that plaintiff's certificate of authority had not been restored as of December 11, 1967, two months after this action was filed. Defendant further set up in his motion that there were no disputed material facts in issue, that plaintiff was not entitled to sue in the courts of Missouri, and prayed summary judgment in the defendant's behalf. Apparently, the parties agreed or intended to file a stipulation of facts, but we do not find it in the transcript. There was an exchange of letters, which are in essence trial briefs, but no formal stipulation appears.

The trial court made no findings of fact, but it is apparent from the pleadings, the letters addressed to the court, and the briefs, that the sole question before the court was whether or not the plaintiff, a foreign corporation, was transacting business in this state without a certificate of authority to do so. The defendant, both on trial and in this court, maintains that the contract contemplates the performance of services in Missouri by the plaintiff. Of course, if the plaintiff is undertaking to transact business in this state it cannot maintain this action until it has qualified under the provisions of Chapter 351 relative to foreign corporations. § 351.635; Salitan v. Carter, Ealey and Dinwiddie, Mo.App., 332 S.W.2d 11, 14–15, 80 A.L.R. 2d 455; and see Jerrold-Stephens Co. v. Gustaveson, Inc., D.C.Mo., 138 F.Supp. 11,

---

1. All references to statutes and rules are to R.S.Mo. (1959), V.A.M.S. and V.A.M.R., except as otherwise noted.

13–14. The appellant maintains that it was not doing business within the state because this transaction is one of those specifically excepted by § 351.570.

Section 351.570, so far as it is material here, provides:

"1. No foreign corporation shall have the right to transact business in this state including business on any federal or state owned property in this state until it shall have procured a certificate of authority so to do from the secretary of state. No foreign corporation shall be entitled to procure a certificate of authority under this chapter to transact in this state any business which a corporation organized under this chapter is not permitted to transact. * * *

"2. Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities:

* * * * * *
(6) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts;

* * * * * * "

■ Whether or not this contract constitutes or contemplates "doing business" within this state obviously requires a construction of the contract in the first instance, and of course the construction of a contract is ordinarily a matter of law. City of St. Louis v. Parker-Washington Co., banc, 271 Mo. 229, 242–243, 196 S.W. 767, 770 [5], cert. denied, 245 U.S. 651, 38 S.Ct. 11, 62 L.Ed. 531. We have set out this particular contract, however, by reproduc-

tion, to show that it cannot be fairly interpreted by resort to the face of the instrument alone. Despite the designation of the first part of the contract as an "application," and despite the references to an "exclusive endorsement program," the transaction seems to be an order for some telephone book covers. Nevertheless, the plaintiff's duties are vague, even obscure, and the subject-matter is described in terms and abbreviations which are not in common use. While we may speculate that a "white, custom screened Tel-A-Cover" is a telephone book cover, we do not *know* that, nor do we know, for example, the meaning of the letters "FRD" following the words "Ad Size." The parties to a contract may use codes or abbreviations having a special meaning if they wish, but if they do, some showing of the circumstances surrounding the making of the contract is required to show the special meaning of the terms used. Bailey v. St. Louis & S. F. Ry. Co., Mo.App., 290 S.W. 630, 631 [1]; Buster Brown Co. v. North-Mehornay Furniture Co., 140 Mo.App. 707, 710, 126 S.W. 988, 989; 3 Williston, Contracts, § 612, p. 1760 (Rev. ed. 1936).

■ We are aware, as the defendant points out, that the contract refers to a "manager," to a "St. Louis-Rural division" and to an "endorsement supervisor," and that paragraph sixteen of the "contract terms and conditions" contemplates some kind of investigation to determine whether or not the defendant is complying with the "Code of Ethics." However, in our view of the matter, these provisions are ambiguous, at least in the sense that they are susceptible of interpretation in opposite ways. Leggett v. Missouri State Life Insurance Company, Mo., 342 S.W.2d 833, 852; J. E. Blank, Inc., v. Lennox Land Co., 351 Mo. 932, 957, 174 S.W.2d 862, 868. The inclusion of these terms does not necessarily mean that the plaintiff will continue to deal with the defendant, or even that it will carry on any activity in this state beyond solicitation of the defend-

ant's order. As with the subject-matter, some interpretation is necessary.

■ We are further aware, though the parties have not directly raised the point, that the contract provides that "no statement, remark, agreement, or understanding, oral or written, not contained herein, will be recognized or enforced." Nevertheless, we do not believe that all interpretation of the contract is foreclosed. Merely ascertaining the meaning of indefinite or ambiguous contract terms by resort to extrinsic circumstances does not violate the parol evidence rule, Gate City Nat. Bank v. Chick, 170 Mo.App. 343, 347, 156 S.W. 743, 744–745 [1, 2]; Garden State Plaza Corp. v. S. S. Kresge Co., 78 N.J.Super. 485, 189 A.2d 448, 454–455; 3 Corbin on Contracts, § 579 (1960), and we think this is true even though the contract must be regarded as a Wisconsin contract. Milaeger Well Drilling Co. v. Muskego Rendering Co., 1 Wis.2d 573, 85 N.W.2d 331, 334 [1], 66 A.L.R.2d 563; Wheelwright v. Pure Milk Ass'n, 208 Wis. 40, 240 N.W. 769, 771–772 [2] [3, 4], 242 N.W. 486.

■ All this preliminary discussion leads us to the point which we consider decisive and controlling in this case. For the reasons indicated, it is our view that the contract in issue is susceptible of differing constructions, though we do not express any opinion as to its proper interpretation. The defendant was required to show unassailably as a matter of law that he was entitled to judgment. Rule 74.04 (h). When the meaning of a contract is so apparent that it may be gleaned from the face of the instrument, then granting summary judgment may be a proper procedure in an action based on the contract. Ordinarily, however, " * * * the proper discharge of the judicial function in a case in which the parties to an agreement disagree as to its meaning and effect * * requires something further than a mere examination and consideration of words employed in the written contract. * * * " Cure v. City of Jefferson, Mo., 380 S.W.2d

305, 310. In other words, unless the contract is so clear and unequivocal in its meaning that it necessarily, as a matter of law, precludes plaintiff's recovery, a motion for summary judgment based on an interpretation of the contract should be denied. E. O. Dorsch Electric Co. v. Plaza Construction Co., Mo., 413 S.W.2d 167, 173 [7, 8]. We believe that in this case, before resolving the construction of the contract, the court should have had the benefit of all relevant evidence which might shed light upon the meaning of the contract terms used, and that a summary judgment was therefore improper.

The defendant further maintains that the trial court properly entered a summary judgment in his favor because the plaintiff's petition and the attached exhibit clearly show that the plaintiff is not the owner or holder of the note and therefore has no right to maintain this action. In this connection, the defendant calls our attention to the general principle that in actions on bills and notes, the plaintiff must allege facts showing his title or right to sue, 12 Am.Jur.2d Bills and Notes, § 1110, p. 140, and to Dowdy v. Lincoln National Life Insurance Company, Mo.App., 384 S.W.2d 282, 284–285 [3], wherein it is held that a summary judgment may be rendered on the pleadings alone.

■ The point is not without merit; the petition is subject to criticism. Disregarding the exhibit, it recites the execution of the note to plaintiff as payee, the terms of the note, and the defendant's default. Had the plaintiff gone no further, we think the petition would have been sufficient without any allegation that plaintiff was the present owner and holder of the note. Kirby v. Robinson, 226 Mo.App. 561, 44 S.W.2d 253, 254 [2]; Parkinson v. Diefenderfer, 128 Mont. 547, 280 P.2d 424, 425 [1, 2]. Nevertheless, plaintiff attached the exhibit, and of course it became a part of the pleading for all purposes. Rule 55.14; Travelers Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418,

419 [4], 19 A.L.R.3d 1043, 1047. The exhibit shows that plaintiff had endorsed the note "with recourse." As the original payee, the plaintiff was still entitled to bring an action on the note in its own name, without producing a receipt or endorsement back from the endorsee, but its right to sue was dependent on its possession of the note. American Forest Co. v. Hall, 279 Mo. 643, 655–656, 216 S.W. 740, 743–744; Carter v. Butler, 264 Mo. 306, 325–327, 174 S.W. 399, 403–404. The original note was not attached, and plaintiff did not plead that the note was in its possession.

 If we assume, however, that plaintiff's title or ownership of the note was not admitted by defendant's failure to deny it specifically, see 12 Am.Jur.2d Bills and Notes, § 1139, pp. 166–167, and that a motion for summary judgment may sometimes be granted upon the pleadings alone, Dowdy v. Lincoln National Life Insurance Co., supra, 384 S.W.2d at 284–285 [3], we still cannot agree that the judgment should be affirmed. The motion for summary judgment is not intended to duplicate the motion to dismiss for failure to state a claim upon which relief can be granted, nor the motion for judgment on the pleadings. Lindsey v. Leavy, 9 Cir., 149 F.2d 899, 902 [6], cert. denied, 326 U.S. 783, 66 S.Ct. 331, 90 L.Ed. 474; 6 Moore, Federal Practice, § 56.09, pp. 2122–2123 (2d ed. 1966). If a motion for summary judgment is sustained on the ground that the petition is insufficient, leave to amend should ordinarily be granted. Dunn v. J. P. Stevens & Co., 2 Cir., 192 F.2d 854, 856 [6]; 6 Moore, Federal Practice, § 56.11 [2], pp. 2153–2154.[2]

For the reasons indicated, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

STONE and TITUS, JJ., concur.

---

2. See also Divilbiss, Summary Judgments in Missouri, 32 Mo.L.Rev. 29, 42–44 (1967).