### URBISH et al. v. RUTLEDGE. (No. 10128.)

Court of Civil Appeals of Texas. Dallas.
Oct. 22, 1927.

Rehearing Denied Dec. 3, 1927.

1. Tender ⊖➙12(4) — Refusal of tender of amount due on notes for failure to include attorney's fees held unwarranted.

Evidence *held* insufficient to show that notes had been properly placed in hands of attorney for collection before date of tender of amount due; hence refusal of tender on ground that attorney's fees were not included therein was improper.

2. Bills and notes ⊖➙534—Demand for payment of notes held insufficient to place payee in default as affects liability for attorney's fees.

Demand for payment of notes unaccompanied by a proper release of deed of trust securing them *held* insufficient to place payee in default as affects liability for attorney's fees.

Appeal from District Court, Dallas County; T. A. Work, Judge.

Suit by W. J. Rutledge, Jr., against A. J. Urbish and others. Decree for plaintiff, and defendants appeal. Affirmed.

Burgess, Owsley, Storey & Stewart, of Dallas, for appellants.

Henry P. Edwards, of Dallas, for appellee.

---

⊖➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

VAUGHAN, J. [1] On the application of appellee, W. J. Rutledge, Jr., as plaintiff, for a writ of injunction against appellants A. J. Urbish, Knox W. Sherrell, and the North Texas National Bank of Dallas, Tex., as defendants, to restrain the sale of a tract of land situated in the city of Dallas, Dallas County, Tex., being 161x225 feet out of block 1 of Hawkins Oak Lawn addition to the city of Dallas, being also described as block 1/1338 according to the official map of said city, under two certain deeds of trust, in which one T. W. Vardell was named as trustee, to secure the payment of two certain promissory notes, each of date November 3, 1925, and each due November 3, 1926, under notice of sale posted by appellant Knox W. Sherrell, as substitute trustee, a temporary restraining order was granted returnable to the trial court May 28, 1927, at 10 o'clock a. m., interdicting the sale of said property until said return date. Appellants duly filed an answer, the effect of which will be revealed in the discussion of the propositions on which this appeal is based. Hearing was begun on May 28, 1927, and passed over until June 6, 1927, on which date a temporary injunction was granted restraining appellants from proceeding further with the sale of said property and from demanding or undertaking to collect any sum in addition to the amount of $14,603.59 tendered by appellee in payment of said two notes, and from otherwise enforcing the liens or said deeds of trust pending the further orders of said court. This judgment is before us for review and revision. We find the following material facts to have been established by the evidence and on which the judgment appealed from must have been bottomed:

On the 3d day of November, 1925, one James P. Thomas duly executed and delivered two promissory notes of that date, payable to the Southwestern Life Insurance Company, or order, at its office in Dallas, Tex., one for $4,000 and one for $10,000, each due November 3, 1926, with interest thereon from date until maturity at the rate of 8 per centum per annum, payable semiannually on the 3d day of May and November in each year. The deeds of trust securing the payment of said notes each contained the following provision as to the payment of attorney's fees:

"That, if such note is placed in the hands of an attorney for collection, 10 per cent. additional on the amount then due shall be paid as attorney's fee."

To secure the payment of said notes, the said Thomas executed two deeds of trust on the real estate above described, in which one T. W. Vardell was named as trustee. That on or about the 22d day of February, 1927, appellant Urbish became the owner and holder of said notes under proper transfer and indorsement by the Southwestern Life Insurance Company. That there had been a second lien on said real property held by appellant Urbish in the sum of $5,000 and that note had been paid in February, 1927, under an agreement that Urbish would obtain an extension of the two notes involved in this suit to May 3, 1927. That, in order to carry out this agreement, Urbish arranged with appellant bank to advance the money necessary to pay the Southwestern Life Insurance Company said notes and carry said indebtedness until May 3, 1927. That the maturity of said notes was on the 22d day of February, 1927, extended by said Urbish to May 3, 1927, and on or about the ———— day of ————, 1927, said notes were indorsed in blank by said Urbish and delivered to appellant bank as collateral security for the payment of an indebtedness of $14,000 due by him to said bank. That James P. Thomas on the ———— day of ————, 1926 (the exact date not being disclosed by the record), conveyed said real estate to one Mrs. Ora Hardesty, and on the 6th day of May, 1927, said property was conveyed by Mrs. Ora Hardesty to appellee, Rutledge, Jr.; the respective considerations for said conveyances not being disclosed.

When the notes became due under the extension, payment was not made, but a short time prior thereto appellee conferred with W. G. Kelly, as representative of said bank, about further indulgence in reference to the payment of said notes; said appellee stating that arrangements had been made by which the Pacific Mutual Life Insurance Company would advance $10,000 and that he (appellee) had $6,000 in Liberty bonds, and from said sources the money would be forthcoming to pay the amount due on said notes held by said bank as collateral. Appellee was advised by said Kelly that any arrangement that might be made with appellant Urbish for a few days' time within which the proposed loan from the Pacific Mutual could be arranged would be satisfactory to the bank, and Urbish agreed to grant further accommodation for payment to be made, namely, until May 7, 1927. That at no time were the notes presented for payment at the place of payment designated therein, or demand therefor made on the maker, Thomas. Demand for payment was not made on appellee, Rutledge, Jr., by appellant bank, the holder of said notes in due course, until the 14th day of May, 1927. That, when demand was then made, same was not accompanied with proper executed release releasing the deed of trust lien on the above property. That on the 13th day of May, 1927, appellee, Rutledge, made a due and lawful tender to appellant bank, as well as to appellant Urbish, of the sum of $14,603.59 in full payment of said notes, which tender was refused by said appellants, respectively, because same did not cover the

amount of 10 per cent. attorney's fees. On May 14, 1927, the notes were placed by appellant bank with Mr. R. G. Storey, one of appellant's attorneys, for posting the property for sale under deeds of trust to satisfy the notes. Prior to this time, to wit, on May 9, 1927, the trustee's notices of sale had been posted in the name of R. G. Storey, as trustee, at the request of appellant Urbish, but he had not been duly appointed substitute trustee at that time. T. W. Vardell had not refused to act, and did not refuse to act as such trustee until the 16th day of May, 1927.

During these several proceedings, said notes were held by appellant bank under its original acquisition of same. That appellee, Rutledge, was able and ready and willing to pay said notes, principal, and interest on the 13th day of May, 1927, and continuously remained so able, ready, and willing to pay the sum so tendered by him in payment of said notes up to and including the date of the trial of this cause in the court below. The notes were not paid on the 7th day of May 1927, and became delinquent on that date, and on Monday, May 9th, appellant Urbish instructed Mr. Storey, one of his attorneys, to proceed with the collection of the notes, and it was agreeable with the bank for Mr. Urbish to proceed to enforce the collection of same.

However, the notes were never delivered to him for that purpose until May 14, 1927. Appellant bank did not direct a foreclosure of the deeds of trust securing the notes, or place them in the hands of an attorney for collection. On May 9, 1927, appellant Urbish had a conversation with Mr. W. G. Kelly, vice president of appellant bank, in which Urbish told Kelly that he had appointed Mr. R. G. Storey, one of his attorneys, a member of the firm of Burgess, Owsley, Storey & Stewart, to collect the notes, and stated that he wanted to get the notes in order to foreclose to protect the notes the bank held at that time, and authorized said Kelly, as officer of appellant bank, to deliver the notes to Mr. Storey for collection. While the bank did not deliver the notes to Urbish, it was entirely agreeable for him to collect same. That said appellant bank was willing to deliver the notes to Urbish, or his attorney, to bring any action he wished to take. The notes were held by the bank until the 14th day of May, 1927, on which date a trust agreement or receipt for said notes was executed, which contained the following provision:

"Received from the North Texas National Bank in Dallas, Tex., the items enumerated in the schedule below, which items are the property of the North Texas National Bank of Dallas, Tex., and are received and held by the undersigned in trust for the North Texas National Bank in Dallas, Tex., and subject at all times to its order, and shall be kept separate and apart from all other items."

The two notes involved were scheduled. Said trust agreement was signed by appellant A. J. Urbish, and said agreement was indorsed in pencil, "To Storey for posting." Said notes were not delivered to appellant Urbish, or his attorney, prior to the date of said trust agreement. The above pencil memo was made on said agreement on May 15th or 16th, and, as testified to by Mr. Kelly, "to keep a record to show what actual disposition the bank had made of the notes." That Urbish's indorsement on the notes had never been modified; in fact, nothing done with the notes except under said trust agreement. At the time appellee made his tender of payment, the notes were still in the possession of appellant bank, bearing the indorsement of appellant A. J. Urbish, and held by said bank as collateral to Urbish's note. On May 13, 1927, Mr. R. G. Storey demanded the additional 10 per cent. as attorney's fees, claiming that the notes had been placed in his hands for collection as attorney for Urbish. At this time he did not have the physical possession of the notes, the notes being then in the possession of the bank bearing Urbish's indorsement, and Urbish's note to the bank was still unpaid.

It is admitted by appellants that, as shown by the pleadings, the sole question to be determined on this appeal is whether or not the 10 per cent. attorney's fees claimed by appellant Urbish should be paid by appellee. Appellants base this appeal upon the sole proposition, namely, that:

"Attorney's fees as provided for in a note are due and payable after default and after demand is made for the payment thereof by the holder or owner of the notes."

Was appellant Urbish such owner or holder of said notes, and, if so, was the presentment of same for payment as made sufficient under the Negotiable Instruments Law to place any party interested in the payment of said notes in default?

We think these queries must be answered in the negative. Appellant bank was a holder in due course of said notes within the meaning of sections 52 and 59 of article 5935, Vernon's Ann. Texas Civil Statutes, vol. 17, p. 89. Appellant Urbish not only by his indorsement and delivery of said notes into the possession of appellant bank vested the legal ownership of said notes in said bank, but, by the execution of the trust receipt or agreement of date May 14, 1927, reaffirmed the title to said notes as being then vested in said bank as the owner and holder thereof, and as being entitled to receive all of the proceeds arising from the collection of same. This condition continued from the date appellant bank acquired said notes until the execution of the trust agreement under which the notes were placed in possession of appellant Urbish as trustee for the

use and benefit of said bank. This clothed appellant Urbish for the first time after he had parted with his possession and ownership of the notes, as above stated, with the authority to make demand for the payment of the notes, not in his own right, but as trustee representing the bank. Carter v. Butler et al., 264 Mo. 306, 174 S. W. 403, Ann. Cas. 1917A, 483. When appellant Urbish indorsed the notes in blank and delivered same to appellant bank to be held as security for the payment of the money advanced by said bank, and which was paid to the Southwestern Life Insurance Company, Urbish parted with title to the notes and had only the right to pay his debt and recover his notes from the bank. All of the rights incident to ownership of the notes, including the legal title to same, became vested in appellant bank, and so remained along with the actual possession of said notes until after the tender of payment by appellee of said notes to appellant bank.

The only evidence of a willingness upon the part of appellant bank to allow Urbish to make collection of the notes was the delivery of said notes by the bank to Urbish on May 14, 1927, under the trust receipt or agreement executed by Urbish to said bank on that date. Prior to the execution of said trust receipt and the delivery of the notes by appellant bank thereunder to appellant Urbish, Urbish did not have the right to demand the payment of said notes or to place same in the hands of an attorney for collection because he did not have possession or control of same; said notes during that time being owned by appellant bank and held by it as a bona fide holder, so that Urbish could not deal with the notes in such a manner as to create liability for the payment of the 10 per cent. attorney's fees. Up to the actual delivery of said notes into the possession of Urbish, no legal significance could be attached to the conversation between Kelly, as vice president of the bank, and Urbish, or Urbish's attorney, in reference to the willingness of the bank for Urbish to proceed to make collection of the notes than that the bank, as the holder and owner of said notes, had expressed a willingness for Urbish to proceed to make collection, and that said parties were in the attitude of discussing or negotiating for that course to be taken. Any other conclusion is repelled by the testimony of said Kelly to the effect that the bank had never authorized a foreclosure or placed the notes in the hands of an attorney for collection. American Forest Co. v. Hall, 279 Mo. 643, 216 S. W. 743.

[2] However, conceding that appellant Urbish was in position to make demand for payment, so that failure to pay would have had the effect to create liability for the payment of attorney's fees, appellants are confronted with the proposition that the demand, as made, would not have been sufficient under the Negotiable Instruments Law to have placed the payee in default because, under the law, the holder of said notes was obligated, in making demand for the payment of same, to have accompanied the presentation of said notes with a proper release of the deed of trust liens securing the payment of same before the payee of said notes would default for nonpayment. Such demand for the payment of the notes was never made, either before or after the execution of said trust receipt; therefore appellee's tender, having been timely and seasonably made, the right to demand the payment of attorney's fees never arose, as no one liable for the payment of said notes had made default through nonpayment. O'Connor v. Kirby Investment Co. (Tex. Civ. App.) 262 S. W. 554.

The trial court having properly determined appellants' claim for attorney's fees, we are of the opinion that the court did not err in granting the temporary writ of injunction or in its holdings on which said writ was granted, and therefore its judgment should be affirmed, and it is so ordered.

Affirmed.