PABST BREWING COMPANY and another, Appellants, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD, Respondent. [Two cases.]

*February 19—March 29, 1948.*

For the appellants there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Leo Mann* and *John G. Kamps* of counsel, all of Milwaukee, and oral argument by *Mr. Kamps* and *Mr. Mann.*

For the respondent there was a brief by the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Beatrice Lampert,* assistant attorney general, and oral argument by *Mrs. Lampert.*

*George Gratz* of Milwaukee, for the International Association of Machinists.

WICKHEM, J.  The question upon this appeal is the proper construction of a contract entered into between the breweries and the machinists', union.  The judgments affect a small number of machinists who are primarily maintenance men in the plant.  These employees have their own bargaining unit separate and distinct from workers actually engaged in the brewing and bottling of beer.

On August 19, 1946, as a result of bargaining a contract was entered into between the breweries and the machinists' union. Article II of the contract which is the only part of the contract raising any questions here provides as follows:

"1. Eight (8) consecutive hours shall constitute a day's work, with an assigned lapse period for lunch.  The employees' lunch period shall not be interrupted, except in case of a breakdown.

"2. All shifts starting between the hours of 6 a. m. and 8:30 a. m. shall be considered the first shift.

"3. All shifts starting between the hours of 2:30 p. m. and 5:30 p. m. shall be considered the second shift.

"4. All shifts starting between the hours of 10 p. m. and 12:30 a. m. shall be considered the third shift.

"5. All hours worked in excess of eight (8) hours in any one day shall be considered overtime and paid for at the rate of time and one half (1½).

"6. Employees called back to duty after completing a shift and leaving the plant shall be paid a minimum of three (3) hours' pay at time and one half (1½) for each such call.

"7. Forty (40) hours shall constitute a week's work, consisting of five (5) consecutive days Monday to Friday inclusive. All time worked outside of regular assigned hours shall be considered overtime and be paid for at the rate of time and one half ($1\frac{1}{2}$). In the event of a shift change during an assigned work week, time and one half ($1\frac{1}{2}$) shall be paid for the new shift on the day the change occurs.

"8. All hours worked on Saturday shall be paid for at time and one half ($1\frac{1}{2}$).

"9. When a change is to be made in regular assigned shifts or hours the employees shall be notified no later than Friday.

"10. All hours worked over twelve (12) hours per day, and all hours worked on Sundays, and holidays set forth in article III, shall be paid at double (2) time.

"11. Night shifts, meaning the second and third shifts, may be rotated with the day shift whenever practical, for periods not to exceed six (6) weeks."

The breweries contend that properly construed article II does not call for any overtime or premium pay for regular shifts of employees. The contract provides that eight consecutive hours constitute a day of work; that work may be done in three shifts; that all hours in excess of eight in one day or forty in one week are considered to be overtime; that all work outside of regular assigned hours is overtime; that all hours worked on Saturday shall be paid for at time and a half.

The controversy here has practical relation only to the shift commencing between 10 and 12 p. m. on Friday and running into the early hours of Saturday. The breweries claim that since employees on this shift are not working in excess of eight hours per day or forty hours per week or outside of assigned hours they are not entitled to extra pay simply because their shift extends into Saturday. It is claimed that the provisions of the contract that all work outside of regularly assigned hours is to be considered overtime implies that work done within regularly assigned shifts is not to receive extra pay. The result of this contention would be that work on Saturday is to be paid for at time and one half only if it actually constitutes overtime. It is claimed that if the foregoing meaning is not

clear from the language of the contract the latter is ambiguous and that an examination into the surrounding facts and circumstances indicates that the foregoing was the intention of the parties.

We are of the view that appellants' contentions must be rejected. Article II of the contract provides for pay at extra rates in two situations: (1) Overtime, which is work done in excess of the daily or weekly limit or outside of regularly assigned hours; (2) what the board calls "premium time" or work which is done on particular days such as Saturday, Sunday, or holidays, or in excess of specified overtime. Except in the latter instance the work has literally nothing to do with overtime but is work called for on days when other workers are not usually expected to work. Saturday is one of these days and subdivision 8 of article II provides without limitation that all hours worked on that day shall be paid for at time and one half. This clause is not only clear and unambiguous standing alone but is consistent with the other portions of the contract and resort to such other portions creates no ambiguity. Article II nowhere classifies Saturday time as overtime and hence the provisions of subdivision 8 are not inconsistent with overtime provisions of the contract. There is no provision that work on a regularly assigned shift is to be excepted from the provisions of subdivision 8. Article II as a whole keeps a clear-cut distinction between overtime and premium work. Subdivision 8 dealing with Saturday work would be entirely meaningless if taken in any but its literal sense. It is clear from the contract that aside from portions of the Friday shift no regularly assigned work is done on Saturday. Hence, if Saturday work had no significance except as it constituted overtime, subdivision 8 would be wholly superfluous as all work except the Friday shift would be subject to overtime rates. The subdivision therefore has no purpose, meaning, or effect unless it provides for premium time and unless it is

applicable to that portion of the Friday shift which extends into Saturday. The same observation applies to work done on legal holidays. A legal holiday can come on any day of the week and if work regularly assigned for Tuesday falls on a legal holiday and the work is insisted upon, it is hardly conceivable that the employer could assert that the regularity of the shift would destroy the right of the employees to holiday rates of pay. Not only does the meaning of article II appear to us to be clear and unambiguous but we can conceive of no meaning other than that above indicated to which the language of article II would accommodate itself. It was said by this court in *Wheelwright v. Pure Milk Asso.* 208 Wis. 40, 46, 240 N. W. 769, 242 N. W. 486:

"It is probably accurate to say that the language of a contract is ambiguous, within the meaning of these authorities, when it may reasonably be taken in more than one sense. In other words, the language must have some stretch in order to authorize the admission of parol evidence without violating the rule against contradicting a writing by parol. For the same reason the parol evidence must establish a sense or meaning which the language of the contract will reasonably bear."

*By the Court.*—Judgments affirmed.