WISCONSIN REAL ESTATE INVEST-
MENT TRUST, Plaintiff,

v.

George WEINSTEIN, Robert C. Pittelkow,
August J. Richter, Joseph A. Deglman,
Robert G. Stenger, Harold V. Schoe-
necker, Clarence Wallner, Thomas W.
Korb, Jane Carity, Reit Property Mana-
gers, Ltd., Stanley H. Weinstein, Wein-
stein Associates, and Peregrine, Marcu-
vitz, Cameron & Peltin, S.C., Defend-
ants,

and

Telvest, Inc., Harold Sampson, Clyde Wil-
liam Engle, and Charles F. DiGiovanna,
Counterclaim Defendants.

Civ. A. No. 80–C–410.

United States District Court,
E. D. Wisconsin.

March 20, 1981.

Richard C. Ninneman, Richard K. Sell and Michael T. Hart, Milwaukee, Wis., for

plaintiff and counterclaim defendants, Whyte & Hirschboeck S.C., Milwaukee, Wis., and Nathan Dardick, Dardick & Jadwin, Chicago, Ill., of counsel.

Irvin B. Charne, Howard A. Pollack and James H. Hall, Jr., Milwaukee, Wis., for defendants George Weinstein, Reit Property Managers, Ltd., Stanley H. Weinstein, and Weinstein Associates.

Clay R. Williams and Gregory G. Wille, Milwaukee, Wis., for defendants Robert C. Pittelkow, August J. Richter, Joseph A. Deglman, Robert G. Stenger, Harold V. Schoenecker, Clarence Wallner, Thomas W. Korb, and Jane Carity; Gibbs, Roper, Loots & Williams, Milwaukee, Wis., of counsel.

William H. Alverson, Godfrey & Kahn, Milwaukee, Wis., for defendant Peregrine, Marcuvitz, Cameron & Peltin, S.C.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This action arises out of the successful takeover of the Wisconsin Real Estate Investment Trust ("WREIT" or "the Trust") in the spring of 1980 by a group of shareholders which denominated itself the WREIT Shareholders Protection Committee ("WSPC"). The WSPC was dominated by Telvest, Inc., then the largest single shareholder of the Trust. The other members of the WSPC were Harold Sampson and Charles F. DiGiovanna. The WSPC commenced a proxy fight in April 1980 seeking shareholder endorsement for the June 10, 1980, election of its own slate of directors. This action was commenced pursuant to § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), to enjoin WREIT from voting the proxies which it had solicited on the ground that its solicitation materials had contained false and misleading material information. WREIT counterclaimed to enjoin the WSPC from voting proxies which it had solicited on the same ground. The original complaint of Telvest, Inc., also contained allegations against the members of the WREIT board of trustees and its manager for breach of fiduciary

duties and sought to void the issuance to the manager in February 1980 of 27,000 shares of WREIT stock.

In an order issued on May 23, 1980, the Court found that WREIT's proxy solicitation materials had contained false and misleading material information. A preliminary injunction was issued prohibiting the board of trustees from voting the proxies at the June 1980 election. The Court also enjoined the WSPC from voting its proxies, and it ordered that a copy of the decision be mailed to shareholders of the Trust. None of the parties to the action sought a delay in the election and both sides then sent out additional proxy solicitation materials.

The takeover attempt was successful and the WSPC's slate of trustees was elected. Thereafter WREIT, under the control of the new management, moved to realign the parties and for an order allowing it to file a second amended complaint. That motion was granted.

The second amended complaint, now by the new management, is brought against three grouped sets of defendants who were affiliated with or a part of the old management:

(1) the "former trustees" (excluding George Weinstein), who were Robert C. Pittelkow, August J. Richter, Joseph A. Deglman, Robert G. Stenger, Harold V. Schoenecker, Clarence Wallner, Thomas W. Korb, and Jane Carity;

(2) WREIT's former counsel Peregrine, Marcuvitz, Cameron & Peltin, S.C. ("Peregrine"); and

(3) the "Weinstein defendants," including George Weinstein, a former trustee and former president of WREIT; Reit Property Manager, Ltd. ("RPM"), a corporation hired by the former trustees to provide management services to WREIT, of which George Weinstein was the president and his son Stanley was the sole shareholder; Stanley Weinstein; and Weinstein Associates, a partnership between George Weinstein and Stanley Weinstein to which RPM turned over its fees received from WREIT.

The second amended complaint contains two counts. The first is a claim brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 alleging a reckless and intentional failure to disclose material information to shareholders in connection with the issuance to RPM in February 1980 of 27,000 shares of Trust stock as compensation for services rendered. The nondisclosure was allegedly part and parcel of a conspiracy by the defendants "to entrench themselves as management of the Trust for the purpose of continuing a course of self-dealing, waste and mismanagement." (Second amended complaint ¶ 24.) The second claim is for breach of fiduciary duties by all of the defendants in connection with actions taken by them in regard to the management of the affairs of WREIT and, in particular, in regard to the fees paid to RPM as compensation for its services as general manager and property manager for WREIT, such breach constituting, according to the plaintiffs' allegations, "willful misfeasance, bad faith, gross negligence or reckless disregard of their duties" to WREIT. (Second amended complaint ¶ 30.) Plaintiff seeks cancellation of the 27,000 shares issued to RPM and an accounting for all losses and damage sustained by WREIT as a result of the defendants' actions.

All of the defendants have raised various affirmative defenses and have counterclaimed for indemnification under the Declaration of Trust. In addition, the former trustees have filed a "counterclaim" against the so-called "counterclaim defendants" Telvest, Inc., Harold Sampson, Clyde William Engle, Charles F. DiGiovanna, and Nathan E. Dardick for violation of § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), in connection with their solicitation of proxies in the spring of 1980. The former trustees seek declaratory relief that the proxy solicitations were violative of that same statute and an order setting aside the results of the June 1980 election.

The Weinstein defendants have brought a similar "counterclaim" against the same persons as the former trustees have filed against, and in addition against Richard Y. Fisher, Richard C. Jones, Gerald A. Kien, John P. Miller, Joel Scheckerman, Everett A. Sisson, Robert R. Starnes, and Robert H. Weitzman who are members of the current board of trustees. The Weinstein defendants have also raised a 15 U.S.C. § 78n(a) (false proxy solicitation) claim and an indemnification claim. In addition, they seek to, but have not filed a motion to, enjoin WREIT from continuing to use RPM's name and to collect dividends allegedly owing on the 27,000 shares of stock issued to RPM in February 1980 and commissions on various sales and purchases of property arranged for WREIT by RPM during its tenure as manager of WREIT.

Presently pending before the court are WREIT's motion for partial summary judgment on Count II of the second amended complaint against the Weinstein defendants,[1] seeking a rescission of the 27,000 shares of stock issued to RPM and an accounting for profits made by the Weinstein defendants under RPM's management agreements with WREIT; Peregrine's motion for summary judgment of dismissal against it of the second amended complaint and for summary judgment on its counterclaim for indemnification for attorneys' fees and costs; and the former trustees' motion for dismissal of the second amended complaint against them, and for summary judgment on their first counterclaim which is for indemnification. All of the motions will be denied.

*WREIT's Motion for Partial Summary Judgment Against the Weinstein Defendants*

RPM was first retained by WREIT in July 1975 as a property manager under the Declaration of Trust. In 1977, it was also retained as a general trust manager. Prior to 1975, the Weinstein defendants had no

---

1. WREIT's motion originally sought partial summary judgment against all of the defendants. In its reply brief filed February 10, 1981, it limited the scope of its motion to the Weinstein defendants.

connection with the Trust. In 1977 the trustees voted to expand the size of the board from eight to nine trustees and invited George Weinstein to become a trustee and president of WREIT, which he did. Count II of the plaintiff's second amended complaint alleges in part that all of the defendants breached their fiduciary duties to WREIT by allowing RPM, and through it all of the Weinstein defendants, excess compensation by means of commissions approved on sales and purchases by RPM of property for WREIT.

Article I of WREIT's Declaration of Trust is the definitional section and provides in part as follows in § 1.4:

"(a) Administrative Expenses. 'Administrative Expenses' of the Trust shall mean all expenses paid or incurred by the Trust, excluding (i) interest, (ii) taxes, (iii) all expenses of operation and maintenance of properties of the Trust, which are deemed to include, among other things, depreciation and Property Management Fees, * * *. Without limiting the generality of the foregoing, 'Administrative Expenses' shall include any fees paid to the Manager in such capacity, * *.

* * * * *

"(j) Manager. 'Manager' shall mean the Person employed by the Trustees under the provision of the first paragraph of Section 4.1.

* * * * *

"(o) Property Management Fees. 'Property Management Fees' shall mean the compensation payable by the Trust to any Person as compensation for services as Property Manager.

"(p) Property Manager. 'Property Manager' shall mean any person employed under the provisions of the second paragraph of Section 4.1."

Article IV, dealing with the manager and property manager and with the limitation on administrative expenses, provides in part:

"4.1 Employment of Manager and Property Manager. The Trustees are responsible for the general policies of the Trust and for such general supervision of the business of the Trust conducted by all officers, agents, employees, advisors, managers or independent contractors of the Trust as may be necessary to insure that such business conforms to the provisions of the Declaration. However, the Trustees are and shall not be required personally to conduct the business of the Trust, and consistent with their ultimate responsibility as stated above, the Trustees shall have the power to appoint, employ or contract with any Person (including one or more of themselves or any corporation, partnership, or trust in which one or more of them may be directors, officers, stockholders, partners or trustees) as the Trustees may deem necessary or proper for the transaction of the business of the Trust. The Trustees may therefor employ or contract with such Person (herein referred to as the 'Manager') and the Trustees may grant or delegate such authority to the Manager as the Trustees may in their sole discretion deem necessary or desirable without regard to whether such authority is normally granted or delegated by Trustees.

"The Trustees may also contract on behalf of the Trust for such services as are customarily rendered by professional property management firms as to any Real Property * * * and may pay as compensation for such services Property Management Fees computed as a percentage of gross revenues from the Real Property or upon some other basis, provided that such Property Management Fees shall be competitive with those customarily charged by professional property management firms for managing similar Real Properties in the locality in which the Real Property is situated, and shall be fair and reasonable to the Shareholders of the Trust.

"The Trustees (subject to all other provisions of this Article IV) shall have the

power to determine the terms and compensations of the Manager, [and] any Property Manager * * *; provided, however, that any determination to employ or contract with any Trustee or any Person in which a Trustee may be a director, officer, stockholder, partner or trustee, shall be valid only if made, approved or ratified by a majority of the other Trustees. * * *."

Administrative expenses, which under § 1.4(a) include the fees paid to the manager but exclude the property management fees, are limited by § 4.4 to an amount "equal to the greater of (a) one and one-half percent (1½%) of the average Net Assets of the Trust, or (b) twenty-five percent (25%) of the net income of the Trust * * *. * * * Each contract made with the Manager shall specifically provide for a refund to the Trust of compensation paid to the Manager of the amount, if any, by which the Administrative Expenses so exceed the limitations stated in this Section 4.4."

The primary section of the Declaration of Trust which is at issue in the Trust's motion for partial summary judgment is § 4.5:

"4.5 Commissions and Certain Other Remuneration. If the Manager or any Trustee or officer of the Trust, or any Person affiliated with the Manager or any such Trustee or officer shall receive any commission or other remuneration in connection with the purchase or sale by the Trust of any of its investment assets, or in connection with the placement or servicing of any Mortgage Loans held by the Trust, the amount of such commission or other remuneration shall be deducted from, and credited against the compensation payable to the Manager for its services in such capacity."

Commencing in 1975, RPM and WREIT entered into yearly contracts for property management services by RPM for WREIT. In 1977, RPM was in addition appointed as the Trust's general manager, and thereafter fees were established payable to RPM in both capacities and prorated monthly. In addition, the contracts between RPM and WREIT provided that if RPM received a commission on the arrangement of the purchase or sale of property for WREIT, it could retain a certain portion of the commission as part of its manager's fee. From time to time the trustees also voted extra compensation to RPM, allegedly for extraordinary services rendered above and beyond those called for by the contract between WREIT and RPM. Fees received by RPM were in turn disbursed by it to Weinstein Associates, a partnership between George Weinstein and Stanley Weinstein.

WREIT now contends that § 4.5 of the Declaration of Trust prohibited the payment to RPM, even when approved by the trustees, of commissions or other remuneration for the purchase or sale of WREIT's property, and that WREIT is, therefore, entitled to partial summary judgment against the Weinstein defendants ordering (1) the rescission of stock paid to RPM and through it to Weinstein Associates and George Weinstein and Stanley Weinstein in lieu of cash compensation for a commission, and (2) for an accounting for all sums paid to RPM as commissions in violation of § 4.5. The Weinstein defendants contend that § 4.5 is a limitation only upon the receipt by RPM of secret rebates from third parties and that under the trustees' general powers to hire a manager and property manager and to fix the terms of compensation of the Trust's agents and employees (see §§ 3.1, 3.2(p), and 4.1 of the Declaration of Trust), the trustees had the authority to allow payment of commissions to the manager in addition to the compensation provided for in the management contract. Therefore, the issue is whether or not § 4.5 prohibits the manager from collecting commissions when he buys and sells property for the trust.

The Weinstein defendants contend that no conflict of any kind arises if full and fair disclosure of commissions is made to the trustees and the trustees in turn decide that the services rendered by the manager justify rewarding it with the commissions or

some portion thereof in addition to its other compensation.

As this Court previously noted in its May 23, 1980, decision, § 4.5 is arguably ambiguous and is susceptible to differing and irreconciliable interpretations, both of which are consistent with the other provisions of the Declaration of Trust, provided that the general limitations on the amount of fees payable to the manager and to the property manager are observed, that is, that the manager's fees not exceed the limitation on administrative expenses of the Trust set forth in § 4.4, and that the property manager's fees be competitive with fees charged by comparable property management firms for managing similar real properties in the area as required by § 4.1.

Plaintiff contends that if an ambiguity exists in the language of § 4.5, the Court should resolve the meaning of the section as a matter of law. Plaintiff further contends that its interpretation of § 4.5 provides the greatest protection to shareholders of the Trust and should be adopted, and that its interpretation requires, even if they should be found to have acted in good faith, that the Weinstein defendants account to the Trust for all commissions and other remuneration received by them even with the approval of the trustees on the purchase or sale of WREIT assets.

■ It is generally correct that the interpretation of a written instrument is a matter of law for the court. Where the language of a contract is ambiguous, however, meaning that it may reasonably be taken in more than one sense, then parol evidence bearing on intent may be looked at. *Wheelwright v. Pure Milk Association,* 208 Wis. 40, 240 N.W. 769 (1932); *Aluminum Co. of America v. National Labor Relations Board,* 159 F.2d 523, 525 (7th Cir. 1964); *Lemelson v. Ideal Toy Corporation,* 408 F.2d 860 (2d Cir. 1969); *Landtect Corporation v. State Mutual Life Assurance Company of America,* 605 F.2d 75 (3d Cir. 1979). The parol evidence may include evidence of the circumstances surrounding the creation of the instrument and the practical construction of the instrument given to it by the parties. *Wheelwright v. Pure Milk Association,* supra, 208 Wis. at 44, 240 N.W. 769. Evidence of industry custom, if not inconsistent with the language of the agreement, may also be relevant. *Tannenbaum v. Zeller,* 552 F.2d 402, 414 (2d Cir. 1977) (mutual fund case involving the allocation of commissions under a management contract). Parol evidence may not, however, be used to impose a meaning on the language of the instrument which it will not reasonably bear. *Wheelwright v. Pure Milk Association,* supra, 208 Wis. at 46, 240 N.W. 769. The Court must determine if there is an ambiguity in the language. If there is, then it is for the finder of fact to resolve, based upon the parol evidence, the meaning of the instrument, unless the extrinsic evidence is not conflicting or no conflicting inferences can be drawn from it, in which case the obligation to construe the instrument rests with the court. *Ibid.,* at 49, 240 N.W. 769; *Aluminum Co. of America v. National Labor Relations Board,* supra.

■ The WREIT in moving for partial summary judgment has relied primarily on the claimed lack of ambiguity in § 4.5. Once the judgment is made that § 4.5 is capable of varying constructions, it follows that plaintiff's motion for partial summary judgment must be denied because of the inadequacy of the factual record before the court. For example, there is no concrete information in the record regarding the amount actually paid to RPM from 1975 through 1980, the knowledge of the former trustees as to RPM's connection with Weinstein Associates and George Weinstein's connection with both, the circumstances surrounding the payment of commissions by WREIT to RPM, the relationship between the sums paid to RPM and the limitation on the total amount of administrative expenses allowable under the Trust instrument, and the industry practice with regard to the compensation of trust managers. The Trust's motion for partial summary judg-

ment against the Weinstein defendants, therefore, will be denied.

### The Former Trustees' Motion for Summary Judgment

The former trustees have moved for summary judgment dismissing Count I of the second amended complaint as to themselves for failure to state a claim, and Count II on principles of pendent jurisdiction. They have also moved for summary judgment dismissing Count II on its merits and for summary judgment on their first counterclaim against WREIT, in which they seek indemnification for their costs and legal expenses incurred in defending this action under §§ 7.4(a) and 7.9 of the Declaration of Trust, based upon their claimed good faith in dealing with the Weinstein defendants and their reliance upon the advice of counsel.

Count I is brought pursuant to 15 U.S.C. § 78j and 17 C.F.R. § 240.10b–5 which prohibit the use, in connection with the sale of any security, of any manipulative or deceptive device. WREIT now contends that the issuance to RPM in February 1980 of 27,000 shares of Trust stock as compensation, in addition to fees under the management contract, for services rendered was in violation of 15 U.S.C. § 78j because the stockholders of the Trust were not informed that the issuance was in violation of § 4.5 of the Declaration of Trust and was part of a scheme to perpetuate the then management of WREIT and to allow the former trustees in concert with the Weinstein defendants to continue their course of waste and mismanagement of WREIT's assets. As part of the alleged management scheme, stockholders were not informed of George Weinstein's interest in RPM and that the fees paid to RPM actually were in part going to George Weinstein because he had an allegedly secret partnership interest in Weinstein Associates which received money from RPM.

The former trustees take the position that they were fully aware of George Weinstein's connection with RPM and Weinstein Associates and of the manner in which he benefitted from payments to RPM, that they were independent trustees acting with full knowledge and on advice of counsel in approving the arrangements with RPM, that disclosure of information to them constituted full disclosure within the meaning of 15 U.S.C. § 78j, and that disclosure to the shareholders as well is not required by that statute.

 A breach by trustees of a fiduciary duty, for example in connection with the sale of stock for less than fair market value, without an element of deception, misrepresentation, or nondisclosure is not violative of 15 U.S.C. § 78j or Rule 10b–5. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). Only a defrauded purchaser or seller has standing to sue under that section, and when a trust is the seller and shareholder approval of the sale is not required,[2] full disclosure to the trustees is equivalent to disclosure to the shareholders, at least where a majority of the trustees are disinterested. *Wright v. Heizer Corporation*, 560 F.2d 236, 246–247 (7th Cir. 1977). If, however, the beneficiary of the transaction controls the board of trustees to such an extent that the majority of the trustees are not independent, then disclosure to the shareholders as well as to the trustees is required to prevent a violation of 15 U.S.C. § 78j because they are the only persons aside from the trustees who are in any position to protect the interests of the trust or corporation. *Wright v. Heizer Corporation*, supra, at 248; *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 993 (7th Cir. 1976). Count I does state a claim against the former trustees based upon their alleged subservience to George Weinstein and their failure to make full disclosure to the shareholders. Consequently, the court also has pendent jurisdiction over Count II.

---

**2.** Section 3.2(f) of the WREIT's Declaration of Trust provides that the trustees may issue shares as consideration on such terms as they deem advisable, without shareholder approval.

With regard to the former trustees' claims that they acted in good faith and in reliance on the advice of counsel and therefore are entitled to summary judgment dismissing Count II which alleges a breach of their fiduciary duties, and allowing their first counterclaim which is for indemnification under the Declaration of Trust, the relevant provisions in the Declaration of Trust are as follows. Section 3.1 provides in part:

"* * * Any determination made in good faith by the Trustees of the purposes of the Trust or the existence of any power or authority hereunder shall be conclusive. In construing the provisions of this Declaration, presumption shall be in favor of the grant of powers and authority to the Trustees. * * *"

Article VII, on the liability of trustees, shareholders, and officers, provides in part:

"7.1 Exculpation of Trustees and Officers. No Trustee or officer of the Trust shall be liable to the Trust or to any Trustee for any act or omission of any other Trustee, Shareholder, officer or agent of the Trust, nor otherwise liable to the Trust for any action *taken by him in good faith* in performing his duties as a Trustee or officer of the Trust, except for his own willful misfeasance, bad faith, gross negligence, or reckless disregard of duty.

\* \* \* \* \* \*

"7.4 Indemnity of Trustees, Officers and Others.

"(a) The Trust shall indemnify any person who was or is a party * * * to any threatened, pending or completed action, * * * by reason of the fact that he is or was a Trustee, officer, employee or agent of the Trust, * * * against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding *if he acted in good faith* and in a manner he reasonably believed to be in or

not opposed to the best interests of the Trust * * *. * * *

\* \* \* \* \* \*

"7.9 Reliance. The Trustees and officers may consult with counsel and the advice or opinion of such counsel shall be full and complete personal protection to all of the Trustees and officers in respect of any action taken or suffered by them *in good faith* and in reliance on or in accordance with such advice or opinion. * * *" (Emphasis added.)

There is a genuine issue of material fact as to whether the former trustees acted in good faith in their dealings with the Weinstein defendants or whether they allowed themselves to be dominated by George Weinstein and allowed him to use WREIT for his personal aggrandizement contrary to the best interests of the shareholders of the Trust.

The current management asserts that George Weinstein dominated the former trustees and was able to use WREIT for his own selfish purposes with the acquiescence of WREIT's general counsel. The former trustees assert that they were an independent group with no ties to the Weinsteins and that they voted compensation over and above management fees to the Weinsteins based upon a fair and independent evaluation of the quality of work performed, having in mind the need to provide sufficient compensation and reward to guarantee active and effective management. The former trustees point to their lack of prior connections with the Weinsteins, their experience as business persons with responsible positions outside of WREIT, the opinions of the Peregrine firm hired by WREIT interpreting § 4.5 to allow the payment of commissions, and the reasonableness of the compensation actually paid to RPM.

One who moves for summary judgment has the burden of showing that there is no genuine issue of material fact. If credibility is an issue, statements made by the affiants or movants as to their own good faith

should be viewed with some scepticism. 6 Moore's *Federal Practice* ¶ 56.15[3]. As a general proposition, the issue of good faith is inappropriate for summary resolution. *Riley-Stabler Construction Company v. Westinghouse Electric Corporation*, 396 F.2d 274 (5th Cir. 1962). If after a review of the proofs submitted on a summary judgment motion any doubt remains as to the existence of a genuine issue of material fact, that doubt must be resolved against the movant. *Zahora v. Harnischfeger Corporation*, 404 F.2d 172, 175 (7th Cir. 1968).

The former trustees' motion for summary judgment is supported by the affidavit filed February 3, 1981, of former trustee Robert C. Pittelkow, in which affidavit he outlines the history of the Trust and of its relationship with RPM and states that he and his colleagues on the board of trustees believed that they had the authority under § 4.5 of the Declaration of Trust to vote extra compensation to RPM, that they relied on the opinion of counsel in reaching that conclusion, and that they voted extra compensation to RPM which was justified by the extraordinary services rendered by it to the Trust. The Trust, in opposition, has filed an affidavit prepared by former trustee John F. Monroe, Jr. (not a defendant in this action), stating that he was a trustee from 1963 through April 6, 1977, and observed that after July 1975 when RPM was retained by WREIT, George Weinstein regularly attended meetings of the board of trustees and increasingly influenced the trustees to the extent that he came to dominate and control their actions by the time Mr. Monroe resigned from the board.

That affidavit in conjunction with the questions left unanswered by the record before the court is sufficient to defeat the former trustees' motion for summary judgment on Count II and on their first counterclaim. Included among those unanswered questions, and significant to a resolution of the issue whether or not the former trustees acted in good faith, are:

(1) What efforts, if any, the former trustees made to ascertain the benefits which accrued to George Weinstein, himself a trustee, by way of his connection with RPM. Despite the fact that an audit committee composed of members of the board of trustees was obliged regularly to review disbursements to the manager and property manager, and that the records of RPM revealed that it in turn disbursed large sums to Weinstein Associates, Mr. Pittelkow in his deposition testified that he had heard the name of Weinstein Associates but did not know if George Weinstein was connected with it, if RPM had ever made any payments to it, or if the Trust had ever made use of its services. (Affidavit of James W. Mohr, Jr., dated May 20, 1980, at page 4.)

(2) Whether Mr. Pittelkow's conclusory statement that, based upon his business experience, the payments made to RPM were fair and reasonable is supported by the services actually performed by RPM. The justification advanced for the commissions is that they compensated services performed by RPM over and above its contractual obligations and enabled WREIT to recapture commissions which it otherwise would have had to pay to independent brokers. The record reveals, however, that on at least one occasion the fee paid to RPM by a purchaser reduced the sum which the purchaser would otherwise have been willing to pay directly to WREIT. (Exhibit 1 to the affidavit of John M. Olson, filed June 6, 1980.) Mr. Monroe, also an experienced businessman, states as his opinion in his affidavit that the fees and expenses paid to RPM were excessive.

As previously stated in denying the Trust's motion for partial summary judgment, the record presently before the court is lacking in concrete information regarding such matters as the amount actually paid to RPM from 1975 through 1980, the knowledge of the former trustees as to RPM's connection with Weinstein Associates and

George Weinstein's connection with both, the circumstances surrounding the payment of commissions by the Trust to RPM, the relationship between the sums paid to RPM and the limitation on the total amount of administrative expenses allowable under the Declaration of Trust, and the industry practice with regard to the compensation of trust managers and property managers. In resolving a summary judgment motion, the Court should review all of the evidentiary materials submitted and it may draw legal presumptions from them, but it may not draw any factual inferences which favor the moving party, 6 Moore's *Federal Practice* ¶ 56.15[7] at 56–637, nor may it adjudicate a legal issue upon an inadequate factual basis. 6 Moore's, supra, ¶ 56.15[6] at 56–511. The record in this case does not justify a grant of summary judgment to the former trustees at this stage of the litigation.

*Peregrine's Motion for Summary Judgment*

■ The motion of the Trust's former counsel for summary judgment dismissing the second amended complaint against it and granting it summary judgment on its own and only counterclaim for indemnification is a more difficult motion than that of the former trustees because the plaintiff has made no effort to submit evidence in support of its claims against the former counsel. Nevertheless, the motion will be denied. Relying on Professor Moore once again:

"* * * The function of the court in granting summary judgment is closely akin to that which it performs in directing a verdict. The court may not properly grant summary judgment to the movant on the belief that if the case went to trial and the opposing party obtained a verdict the court would, in the exercise of a sound discretion, set the verdict aside as against the weight of the evidence and grant a new trial. Nor may the court properly grant summary judgment to the movant because it believes that he will

and the opposing party will not prevail at a trial on the merits. Nor is it the court's function on the hearing of the motion for summary judgment to resolve any genuine factual issue. And the party moving for summary judgment has the burden of clearly establishing the lack of any triable factual issue on a record that is adequate for decision of the legal question presented. * * *" 6 Moore's *Federal Practice* ¶ 56.15[6] at 56–601 to 56–602.

Peregrine is charged generally along with the other defendants with having acted in concert to withhold material information from the shareholders in connection with the issuance of 27,000 shares of stock to RPM, meaning particularly the overpayment of commissions to RPM and the violation of § 4.5 of the Declaration of Trust, and with having breached its fiduciary duties to the Trust. The second amended complaint does not denominate its claim against Peregrine as a legal malpractice claim.

The only showing made by the plaintiff to date against Peregrine is that certain of its legal opinions issued to the board of trustees and to the Trust's independent accountant, specifically its opinions regarding § 4.5 and the section setting a limitation on administrative expenses, may have been erroneous. Mr. Robert P. Peregrine's affidavit filed February 4, 1981, states that the firm acted at all times in good faith and in accordance with what it believed to be the best interests of the Trust, and that it believed its opinions to be in accordance with governing law.

■ The difficulty I have in granting the summary judgment motion arises out of the fact that the Peregrine firm acted in an undefined role as "general counsel" to the Trust (Peregrine affidavit ¶ 3, and George Weinstein affidavit ¶ 12), and Mr. Peregrine is alleged to have regularly attended meetings of the board of trustees. The briefs submitted by the parties have not been

illuminating on the issue of the nature of the duty owed to a trust by its general counsel. Yet one who, even without breaching any duty owed on his own behalf, aids a trustee in breaching the trustee's fiduciary duty may be jointly liable with the trustee even if he does not benefit from the breach. *Heit v. Bixby*, 276 F.Supp. 217 (E.D.Mo.1967). I cannot determine from the record now existing what obligation, if any, the Peregrine firm had to supervise the actions of the former trustees and to restrain them from committing acts, such as overcompensation of the manager or property manager, which might constitute a breach of their duty to the shareholders of the Trust. In sum, I am not satisfied that there is a "lack of any triable factual issue" against the Peregrine firm and, therefore, will deny its motion for summary judgment on the basis of the record before me.

### ORDER

For the foregoing reasons,

IT IS ORDERED that the motions of the plaintiff, the former trustees, and the Peregrine firm for summary judgment are denied.